UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRAVIS LEBLANC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES PRIVACY AND CIVIL LIBERTIES OVERSIGHT BOARD, et al., <br><br> Defendants. | Civil Action No. 25-0542 (RBW) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................... 1

LEGAL STANDARD...................................................................................................... 2

ARGUMENT .................................................................................................................. 2

I.  THE STATUTE DOES NOT BAR THE PRESIDENT FROM REMOVING BOARD
MEMBERS AT WILL. ................................................................................................ 2

    A.    The Board's Organic Statute Does Not Impose Any Restrictions on Removals............ 3

    B.    The D.C. Circuit's Decision in *Severino* and the Supreme Court's Decision in *Parsons*
Dictate the Result Here. ....................................................................................... 5

    C.    The 2007 Statutory Changes Did Not Create Removal Protections. ............................. 7

    D.    The Structure and Function of the Board Do Not Imply Removal Protections............ 10

    E.    The Canon of Constitutional Avoidance Suggests That the President May Remove
Board Members for Cause or at Will. ..................................................................... 16

        1.    The Canon of Constitutional Avoidance Applies So Long as There Are Serious
Doubts Regarding the Constitutionality of Interpreting the Statute to Include Removal
Protections That Do Not Exist. ........................................................................... 16

        2.    At Minimum, There Are Serious Doubts Regarding the Constitutionality of
Plaintiffs' Divination of Removal Protections...................................................... 17

II. EVEN IF CONGRESS DID RESTRICT REMOVAL OF BOARD MEMBERS,
PLAINTIFFS ARE NOT ENTITLED TO REINSTATEMENT. ........................................... 20

    A.    Reinstatement Is Not a Proper Equitable Remedy....................................................... 21

    B.    Plaintiffs Are Not Entitled to a Permanent Injunction................................................. 24

        1.    Plaintiffs Have Not Suffered an Irreparable Injury or Demonstrated Inadequate
Remedies........................................................................................................ 24

        2.    The Balance of Equities and Public Interest Favor Defendants. .............................. 30

    C.    Plaintiffs Are Not Entitled to Mandamus Relief......................................................... 31

CONCLUSION................................................................................................................ 33

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*13th Reg'l Corp. v. Dep't of Interior,*
    654 F.2d 758 (D.C. Cir. 1980) ........................................................................................... 31

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.,*
    64 F.4th 1354 (D.C. Cir. 2023) ......................................................................................... 24

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........................................................................................................... 2

*Baker v. Carr,*
    369 U.S. 186 (1962) ......................................................................................................... 23

*Barnes v. Kline,*
    759 F.2d 21 (D.C. Cir. 1984) ........................................................................................... 27

*Berry v. Reagan,*
    Civ. A. No. 83-3182, 1983 WL 538 (D.D.C. Nov. 14, 1983) ......................................... 27, 28

*Berry v. Reagan,*
    732 F.2d 949 (D.C. Cir. 1983)......................................................................................... 27

*Bessent v. Dellinger,*
    145 S. Ct. 515 (2025) ....................................................................................................... 23

*Borders v. Reagan,*
    732 F.2d 181 (D.C. Cir. 1982) ........................................................................................ 6, 7

*Borders v. Reagan,*
    518 F. Supp. 250 (D.D.C. 1981) ....................................................................................... 6

*Burns v. U.S. Gen. Acct. Off. Emps. Fed. Credit Union,*
    Civ. A. No. 88-3424, 1988 WL 134925 (D.D.C. Dec. 2, 1988) ..................................... 26

*Cafeteria & Rest. Workers Union, Local 473, A.F.L.-C.I.O. v. McElroy,*
    367 U.S. 886 (1961) ......................................................................................................... 30

*Carlucci v. Doe,*
    488 U.S. 93 (1988) ..................................................................................................... 12, 13

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ........................................................................................................... 2

*Chaplaincy of Full Gospel Churches v. England,*
    454 F.3d 290 (D.C. Cir. 2006) .................................................................................. 24-25, 30

*Cheney v. U.S. Dist. Court for D.C.,*
    542 U.S. 367 (2004) ......................................................................................................... 31

*Chmielewski v. Env't Prot. Agency*,
   Civ. A. No. 20-3025 (CJN), 2022 WL 22902407 (D.D.C. July 28, 2022) ...................... 15-16

*Collins v. Yellen*,
   594 U.S. 220 (2021) .................................................................................................. 8

*Consol. Edison Co. v. Ashcroft*,
   286 F.3d 600 (D.C. Cir. 2002) ................................................................................ 31

*Davis v. Billington*,
   76 F. Supp. 3d 59 (D.D.C. 2014) ............................................................................ 25

*Dellinger v. Bessent*,
   Civ. A. No. 25-0385 (ABJ), 2025 WL 665041 (D.D.C. Mar. 1, 2025) ................... 26

*Dellinger v. Bessent*,
   No. 25-5028, 2025 WL 559669 (D.C. Cir. Feb. 15, 2025) ..................................... 21

*Dellinger v. Bessent*,
   No. 25-5052, 2025 WL 717383 (D.C. Cir. Mar. 5, 2025) ...................................... 25

*Dellinger v. Bessent*,
   No. 25-5052, 2025 WL 887518 (D.C. Cir. Mar. 10, 2025) .................................... 27

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*,
   485 U.S. 568 (1988) ................................................................................................ 16

*EEOC v. City of Janesville*
   630 F.2d 1254 (7th Cir. 1980) ................................................................................ 25

*English v. Trump*,
   279 F. Supp. 3d 307 (D.D.C. 2018) ................................................................... 28, 29

*Ex parte Fahey*,
   332 U.S. 258 (1947) ................................................................................................ 31

*Farris v. Rice*,
   453 F. Supp. 2d 76 (D.D.C. 2006) .......................................................................... 25

*Franks v. Nimmo*,
   683 F.2d 1290 (10th Cir. 1982) .............................................................................. 25

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010) ................................................................................ 3, 17, 18, 30

*Griffith v. Lanier*,
   521 F.3d 398 (D.C. Cir. 2008) ................................................................................ 15

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
   527 U.S. 308 (1999) ................................................................................................ 22

*Harkrader v. Wadley,*
   172 U.S. 148 (1898) .................................................................................... 23

\* *Harris v. Bessent,*
   Nos. 25-5037/5057, 2025 U.S. App. LEXIS 7301 (D.C. Cir. Mar. 28, 2025)  13, 19, 26-28, 32

*Hetreed v. Allstate Ins. Co.,*
   135 F.3d 1155 (7th Cir. 1998) ...................................................................... 25

\* *Humphrey's Ex'r v. United States,*
   295 U.S. 602 (1935) ........................................... 14, 15, 18, 19, 20, 21, 26, 32

*In re Hennen,*
   38 U.S. (13 Pet.) 230 (1839) ........................................................................ 12

*In re Sawyer,*
   124 U.S. 200 (1888) ............................................................................... 21, 23

*Jennings v. Rodriguez,*
   583 U.S. 281 (2018) ..................................................................................... 16

*Kearcher v. Members of Council of Borough of Mt. Oliver,*
   69 A.2d 394 (Pa. 1949) .................................................................................. 5

*Keim v. United States,*
   177 U.S. 290 (1900) ................................................................................ 12, 13

*Langeman v. Garland,*
   88 F.4th 289 (D.C. Cir. 2023) ....................................................................... 31

*Levesque v. Maine,*
   587 F.2d 78 (1st Cir. 1978) ....................................................................... 25-26

*Machinists v. Street,*
   367 U.S. 740 (1961) ..................................................................................... 16

*Marxe v. Jackson,*
   833 F.2d 1121 (3d Cir. 1987) ........................................................................ 25

*Massachusetts v. Mellon,*
   262 U.S. 447 (1923) ..................................................................................... 10

*Mississippi v. Johnson,*
   71 U.S. (4 Wall.) 475 (1867) ......................................................................... 21

*Morrison v. Olson,*
   487 U.S. 654 (1988) ..................................................................................... 18

*Munaf v. Green,*
   553 U.S. 674 (2008) ..................................................................................... 24

v

*Myers v. United States*,
272 U.S. 52 (1926) ..................................................................... 18, 21, 22, 26

*Nichols v. Agency for Int'l Dev.*,
18 F. Supp. 2d 1 (D.D.C. 1998) ............................................................... 26

*NLRB v. Cath. Bishop of Chi.*,
440 U.S. 490 (1979) ................................................................................ 16

\* *Parsons v. United States*,
167 U.S. 324 (1897) ....................................................................... 5, 6, 12, 21

*Patchak v. Zinke*,
583 U.S. 244 (2018) ................................................................................ 10

*PHH Corp. v. Consumer Fin. Prot. Bureau*,
881 F.3d 75 (D.C. Cir. 2018) ................................................................. 18

*Power v. Barnhart*,
292 F.3d 781 (D.C. Cir. 2002) ............................................................... 31

*Raines v. Byrd*,
521 U.S. 811 (1997) ................................................................................ 27

*Rubino v. City of Mount Vernon*,
707 F.2d 53 (2d Cir. 1983) ..................................................................... 25

*Sampson v. Murray*,
415 U.S. 61 (1974) ......................................................................... 25, 27, 30

\* *Seila L. LLC v. Consumer Fin. Prot. Bureau*,
591 U.S. 197 (2020) ....................................................... 2, 3, 14, 18, 19, 20, 30

\* *Severino v. Biden*,
71 F.4th 1038 (D.C. Cir. 2023) .......................... 1, 3, 4, 5, 6, 7, 11, 13, 14, 17, 20

*Shurtleff v. United States*,
189 U.S. 311 (1903) ................................................................................ 21

*Tao v. Freeh*,
27 F.3d 635 (D.C. Cir. 1994) ................................................................... 2

*Trump v. United States*,
603 U.S. 593 (2024) ......................................................................... 17-18, 21

*United States v. Hansen*,
599 U.S. 762 (2023) ................................................................................ 16

*United States v. Perkins*,
116 U.S. 483 (1886) ................................................................................ 18

*Walton v. House of Representatives*,
  265 U.S. 487 (1924) ................................................................ 23

*Wayman v. Southard*,
  23 U.S. (10 Wheat.) 1 (1825) .................................................. 10

*White v. Berry*,
  171 U.S. 366 (1898) ........................................................... 23, 24

*Wiener v. United States*,
  357 U.S. 349 (1948) ....................................................... 14, 21, 26

*Wilcox v. Trump*,
  Civ. A. No. 25-0334 (BAH), 2025 WL 720914 (D.D.C. Mar. 6, 2025) ................................ 26

*Wis. Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985) ................................................ 25

**Statutes and Constitutional Provisions**

5 U.S.C. § 595 ...................................................................... 5

5 U.S.C. § 1211 .................................................................. 26

5 U.S.C. § 7513 .................................................................. 13

5 U.S.C. § 7532 .................................................................. 13

12 U.S.C. §§ 2241–2242 .......................................................... 8

12 U.S.C. § 5491 ............................................................... 3, 4

15 U.S.C. § 7211 ............................................................... 3, 4

29 U.S.C. § 153 ................................................................. 26

\* 42 U.S.C. § 2000ee ................ 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20, 26, 28, 31

42 U.S.C. § 2286 ................................................................. 8

50 U.S.C. § 1881a .............................................................. 29

Implementing Recommendations of the 9/11 Commission Act of 2007,
  Pub. L. No. 110-53, 121 Stat. 266 ....................................... 7, 8, 9, 10

Intelligence Reform & Terrorism Prevention Act of 2004,
  Pub. L. No. 108-458, 118 Stat. 3638 ................................... 7, 8, 9, 10

U.S. Const. art. II, § 1, cl. 1 ................................................ 17

U.S. Const. art. II, § 2, cl. 2 ................................................ 18

U.S. Const. art. II, § 3 ....................................................... 17

**Rules**

Fed. R. Civ. P. 56 ................................................................. 2

Defendants, the U.S. Privacy and Civil Liberties Oversight Board ("Board" or "PCLOB"), Beth A. Williams in her official capacity as a Board Member, Jennifer Fitzpatrick in her official capacity as Executive Director of the Board, Trent Morse in his official capacity as Deputy Director of Presidential Personnel, and President Donald J. Trump, respectfully cross-move for summary judgment and oppose Plaintiffs Travis LeBlanc and Edward Felten's motion for summary judgment (ECF No. 10).

Effective January 23, 2025, the President removed Plaintiffs from their positions as Members of the Board. Plaintiffs now challenge their removal, seeking an order that would require them to be reinstated to their former office as Members of the Board. Unlike in other cases presenting seemingly similar issues, the Board's organic statute does not impose any restrictions on the President's authority to remove Board Members. *See generally* 42 U.S.C. § 2000ee. Plaintiffs therefore ask this Court to create "for-cause protections" in the Board's statute, despite Congress's decision not to do so. Without a textual leg to stand on, Plaintiffs claim non-removability by relying on arguments unanimously rejected by the D.C. Circuit in *Severino v. Biden*, 71 F.4th 1038 (D.C. Cir. 2023), and by pointing to legislative history. And in doing so, Plaintiffs ask the Court to reinstate Plaintiffs—a remedy this Court lacks authority to enter. These arguments are without merit.

## BACKGROUND

On January 21, 2025, President Trump requested that Plaintiffs resign as Members of the Board by 5:00 p.m. on January 23, 2025, or else their positions would be terminated. *See, e.g.*, LeBlanc Email (ECF No. 10-3) at 7; Felten Email (ECF No. 10-4) at 7. Plaintiffs refused to resign. *See, e.g.*, LeBlanc Decl. (ECF No. 10-3) at 3, ¶ 10; Felten Decl. (ECF No. 10-4) at 3, ¶ 9. On January 27, 2025, Plaintiffs were notified that they were removed from their positions as Board

Members effective January 23, 2025, at 17:01.  *See, e.g.*, LeBlanc Email (ECF No. 10-3) at 9; Felten Email (ECF No. 10-4) at 9.  No reason was provided for Plaintiffs' terminations.  *See, e.g.*, LeBlanc Decl. (ECF No. 10-3) at 4, ¶¶ 16–17; Felten Decl. (ECF No. 10-4) at 4, ¶¶ 15–16.

A month after the President removed them, Plaintiffs sued seeking reinstatement.

## LEGAL STANDARD

Summary judgment is granted when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c).  A fact is "material" when it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## ARGUMENT

Plaintiffs' motion fails because the Board's organic statute does not limit the President's authority to remove Board Members.  *See* 42 U.S.C. § 2000ee.  Congress included no removal protections in this statute, so Plaintiffs are clearly removable.  There is therefore no need for the Court to weigh in on the constitutionality of a contrary decision.  Further, even if any removal protections could be divined, Plaintiffs would not be entitled to reinstatement.  Accordingly, Plaintiffs' motion fails, and the Court should enter summary judgment in favor of Defendants.

## I.    THE STATUTE DOES NOT BAR THE PRESIDENT FROM REMOVING BOARD MEMBERS AT WILL.

Under Article II of the Constitution, the "President's removal power is the rule, not the exception."  *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 228 (2020); *see* U.S. Const. art. II, § 1, cl. 1.  Any incursion on the President's removal power presents serious

constitutional concerns. Courts therefore "will not assume Congress legislated a potential separation of powers problem unless the statutory text makes Congress's intent to test constitutional lines apparent." *Severino v. Biden*, 71 F.4th 1038, 1044 (D.C. Cir. 2023). Instead, the "background presumption that the President may remove anyone he appoints" obligates Congress to "make it clear in a statute if it wishes to restrict the President's removal power." *Id.* Here, PCLOB's organic statute gives *no* indication that Congress intended to "test constitutional lines" by restricting the President's removal authority—let alone a clear directive. So PCLOB's members are removable at will.

### A.    The Board's Organic Statute Does Not Impose Any Restrictions on Removals.

Plaintiffs boldly claim that the "unambiguous text" of 42 U.S.C. § 2000ee forecloses the President from removing Board Members. Pls.' Br. (ECF No. 10-1) at 32. That claim has no basis in the statutory text, which states that "[t]he Board shall be composed of a full-time chairman and 4 additional members, who shall be appointed by the President, by and with the advice and consent of the Senate," 42 U.S.C. § 2000ee(h)(1), and imposes no restriction on removal, *see generally id.* § 2000ee.

Where Congress intends to protect principal officers from removal, it does so clearly. *See, e.g.*, 12 U.S.C. § 5491(c)(3) ("The President may remove the Director for inefficiency, neglect of duty, or malfeasance in office."), *invalidated by Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020); 15 U.S.C. § 7211(e)(6) ("A member of the Board may be removed by the Commission from office . . . for good cause shown before the expiration of the term of that member."), *invalidated by Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010).

Congress did not provide similar protection for PCLOB Board Members. The statute simply does not provide any restriction on removal. *See generally* 42 U.S.C. § 2000ee. The statute

discusses the appointment process, *id.* § 2000ee(h)(1), the qualifications of Board Members, *id.* § 2000ee(h)(2)–(3), and their terms of office, *id.* § 2000ee(h)(4). The statute explicitly contemplates that there will be vacancies on the Board that will periodically need to be filled. *Id.* § 2000ee(h)(4)(C). The only sliver of a textual hook argued by Plaintiffs is a simple term length provision: "Each member of the Board shall serve a term of 6 years, commencing on the date of the appointment of the member to the Board." *Id.* § 2000ee(h)(4)(A).

As Plaintiffs see it, that text purportedly "mandates that members will hold office for a fixed six-year term." Pls.' Br. (ECF No. 10-1) at 29. But that reading strains the plain meaning of "term." As the D.C. Circuit has explained, a "'term' . . . is a ceiling, not a floor, on the length of service." *Severino*, 71 F.4th at 1045. That is because "[w]hen used in federal appointment statutes, the word 'term' has a long-settled meaning of limiting a person's tenure in office, not investing the person with a guaranteed minimum period of service." *Id.*

Further, if Plaintiffs' reading were correct—that is, if the statute set an immutable six-year term—it would mean that congressional silence as to removal offers stronger removal protection than the statutes invalidated in *Seila Law* and *Free Enterprise*, since there would be no exception permitting removal "for inefficiency, neglect of duty, or malfeasance in office" or "for good cause shown." 12 U.S.C. § 5491(c)(3); 15 U.S.C. § 7211(e)(6). While Plaintiffs may urge the Court to read only a prohibition against at-will removal into this simple term length provision, their argument cannot be logically limited in that manner. If "shall serve a term of 6 years" forecloses at-will removal because of the mandatory nature of "shall," then it must likewise foreclose removal for willfully violating the law, neglect of duty, et cetera. Nothing in the text or precedent compels such an absurd result.

**B.    The D.C. Circuit's Decision in *Severino* and the Supreme Court's Decision in *Parsons* Dictate the Result Here.**

As the D.C. Circuit recently confirmed, "the Supreme Court has long held that a fixed statutory term of service leaves untouched the President's presumptive removal power." *Severino*, 71 F.4th at 1045 (citing *Parsons v. United States*, 167 U.S. 324, 339 (1897)); *see also id.* at 1046 ("An act that fixes the term of an office is merely an act designed to bring the terms of the officer named therein to an end after the expiration of the stipulated term.  Its purpose clearly is not to grant an unconditional term of office." (quoting *Kearcher v. Members of Council of Borough of Mt. Oliver*, 69 A.2d 394, 396 (Pa. 1949))).  Just as in *Severino*, "[n]othing in the text of the statute creating the [Board] clearly expresses a congressional intent to trim the President's removal power." *Id.* at 1044.

Plaintiffs' quibbles with differences in statutory language between 42 U.S.C. § 2000ee and the statutes in *Severino* or *Parsons* underscore the weakness of their argument.  First, in *Severino*, the statute provided that "[t]he term of each member, except the Chairman, is 3 years." 5 U.S.C. § 595(b).  Plaintiffs seek to transform this mandatory provision ("is") into an optional provision ("may") by isolating the last of three dictionary definitions of "term" that the D.C. Circuit listed. *Compare* Pls.' Br. (ECF No. 10-1) at 29, *with Severino*, 71 F.4th at 1045 ("[W]e need look no further than the very sources Severino cites.  *See Term*, Webster's Third New International Dictionary 2358 (1966) (def. 2a) ('[A] *limited or definite* extent of time: the time for which something lasts'); *id.* (def. 3a) ('[A] time or date fixed or agreed upon for an action or as a boundary between periods'); *Term*, Webster's New World Collegiate Dictionary 1503 (1st ed. 1968) (def. 3) ('[A] period of time having definite limits; . . . a stipulated length of time that a person *may* hold office.').") (cleaned up; emphases in original)).  But the fact that one of three listed dictionary definitions of "term" happened to include the word "may" was not the reason for the

D.C. Circuit's conclusion; instead, the D.C. Circuit explained, "the Supreme Court has long held that a fixed statutory term of service leaves untouched the President's presumptive removal power." *Severino*, 71 F.4th at 1045 (citing *Parsons*, 167 U.S. at 339).

Likewise, in *Parsons*, the Supreme Court addressed a statute that provided that "[d]istrict attorneys shall be appointed for a term of four years and their commissions shall cease and expire at the expiration of four years from their respective dates." *Parsons*, 167 U.S. at 327–28. Plaintiffs attempt to isolate only the first half of the statute in *Parsons*, with its "shall be appointed for a term of four years" language. *See* Pls.' Br. (ECF No. 10-1) at 30 ("That language is satisfied once the office-holder is appointed, in contrast to language that mandates an office-holder 'shall serve' for a defined tenure."). But even if Plaintiffs are correctly reading "shall be appointed" from *Parsons*, they make no argument regarding the second half of the statute: "their commissions shall cease and expire at the expiration of four years from their respective dates." *Parsons*, 167 U.S. at 327–28. Rather, when read together, the two halves of the statute in *Parsons* are indistinguishable from the "shall serve a term of 6 years" language at issue here, 42 U.S.C. § 2000ee(h)(4)(A). Just like here, "[t]he provision for a removal from office at pleasure was not necessary for the exercise of that power by the president, because of the fact that he was then regarded as being clothed with such power in any event." *Parsons*, 167 U.S. at 339.

With clear Supreme Court and D.C. Circuit authority precluding their argument, Plaintiffs turn to an unpersuasive and vacated 1981 district court order related to a commission *outside* the Executive Branch of the federal government. *See* Pls.' Br. (ECF No. 10-1) at 29 (citing *Borders v. Reagan*, 518 F. Supp. 250, 254–55 (D.D.C. 1981), *vacated as moot*, 732 F.2d 181 (D.C. Cir. 1982)). In *Borders*, the district court held that President Reagan's removal of a member of the District of Columbia Judicial Nomination Commission was null and void. *Borders*, 518 F. Supp.

at 251, 268.  The federal government appealed that ruling, and the D.C. Circuit vacated the order

on mootness grounds on appeal.  *See Borders v. Reagan*, 732 F.2d 181, 181 (D.C. Cir. 1982).  The

district court's vacated order from more than four decades ago was wrongly decided then, is

inapposite now, and is in any event inconsistent with the D.C. Circuit's *Severino* holding.  Reading

"shall serve a term of 6 years," 42 U.S.C. § 2000ee(h)(4)(A), to foreclose the President's removal

power is inconsistent with the clear rule that "a fixed statutory term of service leaves untouched

the President's presumptive removal power."  *Severino*, 71 F.4th at 1045.

Precedent reaffirms a commonsense reading of PCLOB's organic statute:  Board Members

are removable at will, and their "defined term of office" is best understood as "a cap rather than

an entitlement."  *Severino*, 71 F.4th at 1045.

### C.    The 2007 Statutory Changes Did Not Create Removal Protections.

Foreclosed by the plain statutory text, Plaintiffs next turn to the statutory history governing

PCLOB when Congress moved the Board out of the Executive Office of the President.  At one

time, the PCLOB statute provided that "[t]he chairman, vice chairman, and other members of the

Board shall each serve at the pleasure of the President," Intelligence Reform & Terrorism

Prevention Act of 2004 ("2004 Law"), Pub. L. No. 108-458, § 1061(e)(1)(E), 118 Stat. 3638, 3687,

and "[t]he Board shall perform its functions within the executive branch and under the general

supervision of the President," *id.*, § 1061(k), 118 Stat. at 3688; *see also* Implementing

Recommendations of the 9/11 Commission Act of 2007 ("2007 Law"), Pub. L. No. 110-53,

§ 801(a), 121 Stat. 266, 352–58 (replacing Section 1061 in its entirety).

Plaintiffs, however, fail to explain that Congress replaced Section 1061 wholesale,

remodeling the Board and replacing its original organic statute with what was, in effect, an entirely

new statutory provision.  This is not an instance in which a reader may draw inferences from

Congress's choice to line-item remove certain provisions from the statute.

For instance, the Board went from being a board located within the Executive Office of the President to being an "independent agency within the executive branch." *Compare* 2004 Law, § 1061(b), 118 Stat. at 3684, *with* 2007 Law, § 801(a), 121 Stat. at 352 (new § 1061(a)). As the Supreme Court has explained, the term "independent agency" often refers to the fact that an agency is not located within another executive department or within the Executive Office of the President; it does not, as Plaintiffs suggest, indicate independence from the President. *See Collins v. Yellen*, 594 U.S. 220, 248–49 (2021). Indeed, the 2007 amendments specified that the Board operates as "an independent agency *within the executive branch*," 2007 Law, § 801(a), 121 Stat. at 352 (new § 1061(a)) (emphasis added), and not an agency independent of the executive branch.

As the Supreme Court explained in *Collins*, the word "independent" does not offer insulation from presidential accountability. "It may mean instead that the Agency is not part of and is therefore independent of any other unit of the Federal Government." *Collins*, 594 U.S. at 248. "[D]escribing an agency as independent would be an odd way to signify that its head is removable only for cause because even an agency head who is shielded in that way would hardly be fully 'independent' of Presidential control." *Id.* at 249. Indeed, many agencies are described as "independent" agencies but are headed by principal officers without statutory protections from removal. *See id.* (collecting statutory authorities); *see also* 42 U.S.C. § 2286 (establishing the Defense Nuclear Facilities Safety Board as "an independent establishment in the executive branch" and providing for appointment of expert members to five-year terms without removal restrictions); 12 U.S.C. §§ 2241–2242 (similar for Farm Credit Administration Board). Here, as in *Collins*, Plaintiffs' interpretation "reads far too much into the term 'independent.'" 594 U.S. at 248.

Plaintiffs next note that the overhaul of Section 1061 imposed six-year terms on Board members, whereas previously there was no identified term length. *Compare* 2004 Law,

8

§ 1061(e)(1)(E), 118 Stat. at 3687 (service "at the pleasure of the President"), *with* 2007 Law, § 801(a), 121 Stat. at 356 (new § 1061(h)(4): imposing six-year terms). This new term length is not rendered a nullity by allowing the President to remove Board Members; rather, the term requires the President to appoint and the Senate to confirm Members to the Board every six years in order to fill each seat, rather than allowing Board Members to serve in perpetuity. As explained above, the term length services as a ceiling, not a floor.

In addition, the overhaul of Section 1061 removed language specifying that the Board operated under "the general supervision of the President." *Compare* 2004 Law, § 1061(k), 118 Stat. at 3688, *with* 2007 Law, § 801(a), 121 Stat. at 352–58 (containing no similar provision). The deletion of former Section 1061(k) is fully consistent with the overall thrust of the 2007 amendments, which was to remove the Board from the Executive Office of the President and establish it as a freestanding agency within the Executive Branch. *See* 2007 Law, § 801(a), 121 Stat. at 352 (new § 1061(a)). The removal of language expressly placing the Board under the "general supervision of the President" is not remotely the same thing as a prohibition on the President's exercise of his plenary Article II authority to remove Board Members.

This is nowhere near the extent of the modifications Congress made in 2007, and a side-by-side comparison of the 2004 Law and the 2007 Law demonstrates how little of the old Section 1061 remained after Congress's amendments. For instance, the 2007 Law terminated, without cause, all then-active Board Members. *See* 2007 Law, § 801(c)(1)(B), 121 Stat. at 357.[1] Likewise, the 2007 Law changed the description of the qualifications for Board Members, explicitly removing their "independence" as a qualification. *Compare* 2004 Law, § 1061(e)(1)(C),

---

[1]    Notably, after those terminations, the Board lacked a quorum until August 2, 2012. *See* Garrett Hatch, Cong. Rsch. Serv., RL34385, Privacy and Civil Liberties Oversight Board: New Independent Agency Status 8 (2012); *see also id.* at 4 (no quorum from 2004 to 2006).

118 Stat. at 3687 ("Any individual appointed to the Board shall be appointed from among trustworthy and distinguished citizens outside the Federal Government who are qualified on the basis of achievement, experience, and independence."), *with* 2007 Law, § 801(a), 121 Stat. at 355 (new § 1061(h)(2): "Members of the Board shall be selected solely on the basis of their professional qualifications, achievements, public stature, expertise in civil liberties and privacy, and relevant experience, and without regard to political affiliation[.]").  When an entire statutory provision is overhauled and replaced, words are changed; provisions are moved or deleted; new things come into focus; however, that does not mean that every new choice of words dictates that the opposite of the old language is now in place.  That is a logical fallacy that has no grounding in common sense or in statutory interpretation.  The 2007 Law is not in any sense "rendered a nullity" by failing to imply the existence of removal protections for Board Members where Congress chose not to include them.

     **D.**     **The Structure and Function of the Board Do Not Imply Removal Protections.**

     Plaintiffs urge that the structure and function of several provisions in 42 U.S.C. § 2000ee—namely, Board Members' staggered terms, selection criteria, partisan balance, and nature of their work—imply that Congress intended to afford removal protections to the Board.  Pls.' Br. (ECF No. 10-1) at 32–41.  This argument boils down to the assertion that Congress must have intended to insinuate removal protections even if it forgot to affirmatively include them in the statutory text.  In essence, Plaintiffs appear to argue that the omission of any removal protections was a scrivener's error and that the Court should take up the legislator's pen and add (certain, unspecified) removal protections for Board Members.  This is not the proper exercise of the judicial function.  *See, e.g.*, *Patchak v. Zinke*, 583 U.S. 244, 249–50 (2018); *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923); *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 46 (1825).  Congress's silence on this issue provides all the clarity this Court needs.

And in any event, the provisions highlighted by Plaintiffs fail to demonstrate that the structure and function of the Board are "operationally incompatible with at-will presidential removal." *Severino*, 71 F.4th at 1047. First, as explained above, the six-year term length for Board Members, *see* 42 U.S.C. § 2000ee(h)(4)(A), does not preclude the President from exercising his removal power. Plaintiffs further emphasize that Board Members' six-year terms are longer than a four-year Presidential term. But if Congress was so concerned about a single President selecting every Board Member, then it would be odd that the term length did not exceed eight years, since Presidents are often reelected to serve two consecutive four-year terms. Plaintiffs (at 33) next argue that staggered terms promote independence and autonomy. But the D.C. Circuit has explained that the mere existence of staggered terms "gives no indication that Congress intended to take the unusual and potentially constitutionally troublesome step of tying the President's hands when it comes to at-will removal." *Severino*, 71 F.4th at 1049. The one does not follow the other, and there is no inconsistency between having staggered terms and allowing a President to exercise his removal authority to cut short those terms.

Second, Plaintiffs emphasize the qualifications provision for Board Members. *See* 42 U.S.C. § 2000ee(h)(2) ("Members of the Board shall be selected solely on the basis of their professional qualifications, achievements, public stature, expertise in civil liberties and privacy, and relevant experience, and without regard to political affiliation, but in no event shall more than 3 members of the Board be members of the same political party[.]"). Again, this provision does not imply that the President cannot remove Board Members. If the President removes a Board Member, the statute directs that he must continue to comply with the selection qualifications and seek and obtain "the advice and consent of the Senate," as set forth in the statute. *Id.* §§ 2000ee(h)(1), (h)(2), (h)(4)(C). The President's ability to remove Plaintiffs does not render the

qualification provision ineffective, and the qualification provision does not silently nullify the President's removal power.

Third, the partisan balance requirement (part of the qualifications provision, *see id.* § 2000ee(h)(2)), likewise does not render the Board's structure "operationally incompatible" with at-will removal. It merely requires that the President appoint no more than three Board Members of the same political party when he nominates Plaintiffs' replacements. Indeed, the President has done so previously with Plaintiffs without issue. *See* LeBlanc Decl. (ECF No. 10-3) at 1, ¶ 2 ("In August 2018, I was nominated by President Donald J. Trump to be a Board member . . . for a term expiring January 29, 2022. . . . President Trump consulted with Senate Minority Leader Chuck Schumer and then-Speaker Nancy Pelosi on my nomination and re-nomination."). Board Members of the opposing political party may still function in their roles, subject to Presidential accountability.

Plaintiffs urge (at 40–41) that the Board must be selected "without regard to political affiliation," except that "in no event shall more than 3 members of the Board be members of the same political party," *id.* § 2000ee(h)(2), and suggest that because the President removed three Democratic Board Members but not the sole Republican, their removals violate those provisions. But neither provision implies that there is a similar restriction on removals, and the cases Plaintiffs cite provide no support. *See Keim v. United States*, 177 U.S. 290 (1900); *Carlucci v. Doe*, 488 U.S. 93 (1988). In *Keim*, the Supreme Court upheld the President's removal authority, explaining:

> In the absence of specific provision to the contrary, the power of removal from office is incident to the power of appointment. "It cannot for a moment be admitted that it was the intention of the Constitution that those offices which are denominated inferior offices should be held during life. And if removable at pleasure, by whom is such removal to be made? In the absence of all constitutional provision or statutory regulation it would seem to be a sound and necessary rule to consider the power of removal as incident to the power of appointment." *In re Hennen*, 38 U.S. (13 Pet.) 230, 259 (1839); *Parsons v. United States*, 167 U.S. 324 (1897). Unless,

12

> therefore, there be some specific provision to the contrary, the action of the
> Secretary of the Interior in removing the petitioner from office on account of
> inefficiency is beyond review in the courts either by mandamus to reinstate him or
> by compelling payment of salary as though he had not been removed.

*Keim*, 177 U.S. at 293–94 (citations cleaned up).  It does not follow from *Keim* that all selection

qualifications imply the flipside when it comes to removals.  *E.g., Harris v. Bessent*, Nos. 25-5037

& 25-5057, 2025 U.S. App. LEXIS 7301, at *14–18 (D.C. Cir. Mar. 28, 2025) (Walker, J.,

concurring in grant of stay) (elaborating extensive history of presidential removal of officers,

"often based on political disagreements").  Similarly, in *Carlucci*, the Supreme Court simply

addressed which statutory removal provisions applied; it did not in any way transform membership

qualifications into removal restrictions.  *See Carlucci*, 488 U.S. at 103 ("We thus agree . . . that

'[5 U.S.C. §] 7532 is not the exclusive basis for removals based upon security clearance

revocations,' and . . . that '[t]here is nothing in the text of section 7532 or in its legislative history

to suggest that its procedures were intended to preempt section 7513 procedures whenever the

removal could be taken under section 7532.'" (citations omitted)).  Again, the proper focus is on

the statutory text and the words that Congress used, which, here, does not include a restriction on

the President's removal authority.  *See generally* 42 U.S.C. § 2000ee.

Fourth, the Board's functions likewise do not render it "operationally incompatible" with

at-will removal.  Critically, the Board has neither "quasi-judicial" nor "quasi-legislative"

functions: it adjudicates no cases and crafts no laws or regulations.  Much like the body at issue in

*Severino*, it serves primarily advisory functions, and its authority comes from its ability to

recommend policy.  *See Severino*, 71 F.4th at 1047.   And as the D.C. Circuit explained there,

where an agency "is structurally housed squarely within the Executive Branch and serves to advise

personnel in and components of the Executive Branch," a function-based argument does not

support the conclusion that Congress has foreclosed the President from exercising his removal

authority.  *Id.* at 1048.  *Severino* confirms that "[p]roducing advice for the President and to his

delegees is a quintessential example of a 'purely executive' function."  *Id.* (quoting *Wiener v.*

*United States*, 357 U.S. 349, 352 (1948)); *see also id.* ("We, too, have recognized that gathering

trusted advice is a core executive function.").   Just because an agency must also "submit

informational reports to Congress" does not nullify its status as an executive agency.  *Id.*

      Here, the Board is situated "within the executive branch."  42 U.S.C. § 2000ee(a).  It serves

to advise personnel in and components of the executive branch.  *See, e.g., id.* § 2000ee(d)(1)(C)

("The Board shall . . . advise the President and the departments, agencies, and elements of the

executive branch to ensure that privacy and civil liberties are appropriately considered in the

development and implementation of such legislation, regulations, policies, and guidelines."); *id.*

§ 2000ee(e)(1)(B)(i)(II) ("The Board shall . . . periodically submit, not less than semiannually,

reports . . . to the President[.]").   While the Board also provides reports to Congress, *see, e.g., id.*

§ 2000ee(e)(1)(B)(i)(I), that does not make it "quasi-legislative" or nullify its status as an executive

agency.  *See Severino*, 71 F.4th at 1049.  Indeed, the Board's statute makes clear that the Board's

advice function is directed to the Executive Branch.  *See* 42 U.S.C. § 2000ee(d)(1).  The Board

"has no adjudicatory or legislative features that would clearly signal a need for some measure of

independence from Presidential control."  *Severino*, 71 F.4th at 1049.

      Plaintiffs attempt (at 36–38) to analogize the Board to the Federal Trade Commission

("FTC") at issue in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935).  But *Humphrey's*

*Executor*—and *Seila Law*, which explains the limited nature of the Court's holding in *Humphrey's*

*Executor*, *see Seila L.*, 591 U.S. at 228–29—involved a statute that purported to limit the

President's removal authority.  *See Humphrey's Ex'r*, 295 U.S. at 619 (explaining that the question

presented was: "Do the provisions of section 1 of the Federal Trade Commission Act, stating that

'any commissioner may be removed by the President for inefficiency, neglect of duty, or malfeasance in office,' restrict or limit the power of the President to remove a commissioner except upon one or more of the causes named?").  Unlike in *Humphrey's Executor*, where the statute provided that the commissioners were "subject to removal by the President for inefficiency, neglect of duty, or malfeasance in office" and "[t]he words of the act [we]re definite and unambiguous," *id.* at 623, there is no such provision in the Board's organic statute—let alone a definite and unambiguous provision limiting the President's removal authority.  *See* 42 U.S.C. § 2000ee.

If Congress had included removal restrictions in the statute, then this case would present constitutional questions about the applicability of *Humphrey's Executor* to an agency that principally advises the President and the Executive Branch on proposed and existing legislation and executive actions, *id.* § 2000ee(d)(1)(A)–(D), reviews Executive Branch regulations and policies and their implementation, *id.* § 2000ee(d)(2), and submits reports to Congress and the President, *id.* § 2000ee(e).  Here, Congress declined to include *any* removal protections for Board Members, and it is most certainly not the case that "[t]he words of the act are definite and unambiguous" limitations on Presidential removal.  *Humphrey's Ex'r*, 295 U.S. at 623. Accordingly, this case is appropriately resolved through the standard tools of statutory interpretation without needing to opine on the underlying constitutional questions.  Because Congress did not afford Board Members removal protections, Plaintiffs do not have a protected property interest in their employment, and their removals do not violate due process.  *See Griffith v. Lanier*, 521 F.3d 398, 404 (D.C. Cir. 2008) (individuals "subject to at-will dismissal" "lack the statutorily-protected property interest necessary to ground a due process challenge"); *see also*

*Chmielewski v. Env't Prot. Agency*, Civ. A. No. 20-3025 (CJN), 2022 WL 22902407, at *3 (D.D.C. July 28, 2022).

E.      **The Canon of Constitutional Avoidance Suggests That the President May Remove Board Members for Cause or at Will.**

      1.      *The Canon of Constitutional Avoidance Applies So Long as There Are Serious Doubts Regarding the Constitutionality of Interpreting the Statute to Include Removal Protections That Do Not Exist.*

Even if Plaintiffs' arguments were persuasive, the canon of constitutional avoidance would counsel for Defendants' reading. Where Defendants' interpretation of the statute not to restrict the President's removal authority is at least "fairly possible," the Court should adopt it. *See United States v. Hansen*, 599 U.S. 762, 781 (2023) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018)). So even if the Court finds ambiguity in the statutory text, it should use the canon of constitutional avoidance to read the provision narrowly. *See id.* at 781 n.3 ("Attempting to overcome [the constitutional avoidance canon], [the dissent] suggests that the canon has less force in the context of an overbreadth challenge. Our cases offer no support for that proposition. In this context, as in others, ordinary principles of interpretation apply." (citation omitted)).

Applying the canon of constitutional avoidance does not require the Court first to determine that the statute, if interpreted a particular way, would indeed be unconstitutional. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988). Quite to the contrary, there is a serious and well-founded "prudential concern that constitutional issues not be needlessly confronted." *Id.* Thus, so long as a particular interpretation of the statute would "avoid[ ] 'serious doubt of [the statute's] constitutionality,'" *NLRB v. Cath. Bishop of Chi.*, 440 U.S. 490, 500 (1979) (quoting *Machinists v. Street*, 367 U.S. 740, 749 (1961)), and an alternative interpretation that does not raise those doubts is "fairly possible," *Hansen*,

599 U.S. at 781, then the canon applies without the Court first needing to rule definitively on whether Plaintiffs' interpretation of the statute would indeed be unconstitutional.

As explained above, Plaintiffs' interpretation reads into the statute a provision that does not exist. Even if the Court were to deem the absence of a clear provision authorizing Presidential removals to nonetheless imply a restriction, *contra Severino*, 71 F.4th at 1044, that would at minimum make the statute ambiguous, which would implicate the canon of constitutional avoidance. So long as there are "serious doubts" about the constitutionality of Plaintiffs' interpretation of the statute, the Court should interpret the statute as Defendants suggest, which is not just "fairly possible" (i.e., all that is needed to invoke the canon of constitutional avoidance), but the better reading.

> 2.    *At Minimum, There Are Serious Doubts Regarding the Constitutionality of Plaintiffs' Divination of Removal Protections.*

If Congress had attempted to prohibit the President from removing Board Members, the constitutionality of such a provision would be in serious doubt. Board Members are principal officers who lead a freestanding component within the executive branch and perform an executive function by advising the President and other executive agencies on questions of national security and counterterrorism. *See* 42 U.S.C. § 2000ee(c).

The Constitution vests the entirety of the "executive Power" in the President, who is given the sole responsibility to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.* § 3; *see also Severino*, 71 F. 4th at 1043–44. "[A]s a general matter," the executive power encompasses "the authority to remove those who assist [the President] in carrying out his duties." *Free Enter.*, 561 U.S. at 513–14. Without such power, the President would be unable to control those who aid him in executing the laws and "could not be held fully accountable for discharging his own responsibilities." *Id.* at 514; *see also Trump v. United States*, 603 U.S. 593, 608 (2024)

(explaining the President's power to remove executive officers falls "within the scope of his exclusive authority" and "cannot be subject to further judicial examination").

For nearly a century, the Supreme Court has repeatedly reaffirmed "[t]he President's power to remove—and thus supervise—those who wield executive power on his behalf." *Seila L*, 591 U.S. at 204 (citing *Myers v. United States*, 272 U.S. 52 (1926)). The Supreme Court has recognized "only two exceptions to the President's unrestricted removal power." *Id.* First, in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Supreme Court held that Congress could explicitly impose statutory for-cause removal restrictions on "a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said not to exercise any executive power." *Seila L.*, 591 U.S. at 216. Second, in *Morrison v. Olson*, 487 U.S. 654 (1988), and *United States v. Perkins*, 116 U.S. 483 (1886), the Court recognized an exception "for inferior officers with limited duties and no policymaking or administrative authority." *Seila L.*, 591 U.S. at 218. Those exceptions represent the "outermost constitutional limits of permissible congressional restrictions on the President's removal power" under current precedent. *Id.* (quoting *PHH Corp. v. Consumer Fin. Prot. Bureau*, 881 F.3d 75, 196 (D.C. Cir. 2018) (Kavanaugh, J., dissenting)).

Members of the Board do not fit within the *Morrison* exception for inferior officers. They are not inferior officers with narrowly defined duties; to the contrary, they are principal officers appointed by the President with Senate confirmation. *See* U.S. Const. art. II, § 2, cl. 2; *see also* 42 U.S.C. § 2000ee(h)(1). They oversee their own "independent agency within the executive branch." 42 U.S.C. § 2000ee(a); *see also Free Enter.*, 561 U.S. at 511 (explaining that the particular department at issue was "a freestanding component of the Executive Branch, not subordinate to or contained within any other such component"). And they are not subservient to

18

any other principal officer.  Indeed, they are expressly prohibited from acting in another position as "an elected official, officer, or employee of the Federal Government" while serving on the Board.  42 U.S.C. § 2000ee(h)(3).

But even if there were for-cause protections in the statute, this case would present a serious constitutional question as to whether the *Humphrey's Executor* exception would permit those protections.  As the Supreme Court made clear in *Seila Law*, that exception is limited to "multimember bodies with 'quasi-judicial' or 'quasi-legislative' functions" that exercise no executive power.  *Seila L.*, 591 U.S. at 216–17 (quoting *Humphrey's Ex'r*, 295 U.S. at 632).  As explained above, the Board is no "mere legislative or judicial aid," *id.* at 218.  It is a freestanding agency "within the Executive Branch," 42 U.S.C. § 2000ee(a), and it performs executive functions, such as advising the President on national security matters, *id.* § 2000ee(d)(1)(C); *cf. Harris*, 2025 U.S. App. LEXIS 7301, at *30 (Walker, J., concurring in grant of stay) ("*Executive* agencies exercise *executive* power."); *id.* at *40 (describing the Merit Systems Protection Board's power to "conduct . . . studies . . . and report to the President and to the Congress" as one of several "exercises . . . of the executive Power" (internal quotation marks omitted)).

The Board also possesses authority to enforce subpoenas it requests from the Attorney General in federal court.  42 U.S.C. § 2000ee(g)(2)-(3); *see also Seila L.*, 591 U.S. at 219 (describing authority to enforce in federal court as "quintessentially executive power not considered in *Humphrey's Executor*").  It further operates to "coordinate the activities of [ ] privacy officers and civil liberties officers on relevant interagency matters." 42 U.S.C. § 2000ee(d)(3)(C). And Congress specified that the Board must "have access from any department, agency, or element of the executive branch, or any Federal officer or employee of any such department, agency, or element, to all relevant records, reports, audits, reviews, documents, papers, recommendations, or

other relevant material, including classified information consistent with applicable law." *Id.* § 2000ee(g)(1)(A).

The Board's solely executive functions therefore raise at least "serious doubts" as to whether the *Humphrey's Executor* exception for "quasi-legislative" and "quasi-judicial" bodies would apply. *See Humphrey's Ex'r*, 295 U.S. at 628 (describing FTC Commissioner as officer "who exercises no part of the executive power"). As *Seila Law* made clear, the *Humphrey's Executor* exception applies only to a multimember body that "was said not to exercise *any* executive power." *Seila L.*, 591 U.S. at 216 (emphasis added).

In any event, the Court need not affirmatively opine on the constitutionality of any removal protections that Congress might have included in an alternate world because here, unlike in *Humphrey's Executor*, there are no such removal protections. Without similar "definite and unambiguous" statutory text, *Humphrey's Ex'r*, 295 U.S. at 623, the Court should avoid unnecessarily opining on constitutional issues not before it here. "Because of the background presumption that the President may remove anyone he appoints, Congress must make it clear in a statute if it wishes to restrict the President's removal power." *Severino*, 71 F.4th at 1044. Congress did not do so, *see* 42 U.S.C. § 2000ee, so the President is statutorily entitled to remove Plaintiffs.

## II.   EVEN IF CONGRESS DID RESTRICT REMOVAL OF BOARD MEMBERS, PLAINTIFFS ARE NOT ENTITLED TO REINSTATEMENT.

The statutory arguments above demonstrate that the Court should enter summary judgment in favor of Defendants. If the Court were nonetheless to reach the opposite conclusion, it should at least decline to reinstate Plaintiffs to their former positions. Reinstatement exceeds the equitable powers of an Article III court and would intrude on the President's Article II authority to appoint officers of the United States, and Plaintiffs have not demonstrated that mandamus is warranted.

### A.       Reinstatement Is Not a Proper Equitable Remedy.

Plaintiffs ask the Court to order Defendants (other than President Trump) to "restore the plaintiffs to their positions as Board members" and "to take no action that would deprive the plaintiffs of their ability to exercise the functions of their office or deprive the plaintiffs of any right or benefit of that office."  Pls.' Proposed Order (ECF No. 10-5), at 1.  Plaintiffs' requested relief would therefore countermand the President's removal of two principal officers and reinstate them to office.  But the well-settled rule is that "a court of equity has no jurisdiction over the appointment and removal of public officers."  *In re Sawyer*, 124 U.S. 200, 212 (1888).  Indeed, reinstatement is beyond the equitable authority of the court to impose because it "impinges on the 'conclusive and preclusive' power through which the President controls the Executive Branch that he is responsible for supervising."  *Dellinger v. Bessent*, No. 25-5028, 2025 WL 559669, at *16 (D.C. Cir. Feb. 15, 2025) (Katsas, J., dissenting) (quoting *Trump*, 603 U.S. at 608–09).

The Supreme Court has long recognized that a court "has no jurisdiction . . . to enjoin the President in the performance of his official duties."  *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867).  The appointment and removal of principal officers is specifically entrusted to the President, and thus a court may not, by injunction, order the reinstatement of a principal officer the President has removed.  Accordingly, when executive officers have challenged their removal by the President, they have traditionally sought back pay, not reinstatement.  *See Wiener*, 357 U.S. at 350 (suit "for recovery of his salary"); *Humphrey's Ex'r*, 295 U.S. at 618 (suit "to recover a sum of money alleged to be due . . . for salary"); *Myers*, 272 U.S. at 106 (suit "for his salary from the date of his removal"); *Shurtleff v. United States*, 189 U.S. 311, 318 (1903) (suit "for salary"); *Parsons*, 167 U.S. at 326 (suit "for salary and fees").  That rule reflects the obvious Article II problems that arise if a court attempts to reinstate—that is, reappoint—a principal executive officer removed by the President.  The President cannot be compelled to retain the services of a principal

officer whom he no longer believes should be entrusted with the exercise of executive power.  That standard remedy was, in fact, one of the remedies that Plaintiffs initially sought in this action before consciously electing to delete that request from their Amended Complaint.  *Compare* Compl. (ECF No. 1) at 26 ("Award backpay not exceeding $10,000 from the date of the unlawful removals"), *with* Am. Compl. (ECF No. 8) at 26 (deleting that request).

Indeed, many members of the First Congress argued against requiring the Senate's advice and consent for removals precisely because of the risk that such a procedure would require the President to retain someone he had sought to remove.  As Representative Benson observed: "If the Senate, upon its meeting, were to acquit the officer, and replace him in his station, the President would then have a man forced on him whom he considered as unfaithful[.]"  *Myers*, 272 U.S. at 124 (citation omitted).  Representative Boudinot argued: "But suppose [the Senate] shall decide in favor of the officer, what a situation is the President then in, surrounded by officers with whom, by his situation, he is compelled to act, but in whom he can have no confidence[.]"  *Id*. at 131–32 (citation omitted).  And Representative Sedwick asked rhetorically: "Shall a man under these circumstances be saddled upon the President, who has been appointed for no other purpose but to aid the President in performing certain duties?  Shall he be continued, I ask again, against the will of the President?"  *Id*. at 132 (citation omitted).  The injunction Plaintiffs seek raises just this problem.

Issuing an injunction that reinstates Plaintiffs by restraining the President's subordinates does not solve the problem.  A federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity."  *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999).  Reinstatement of a public official is not such a remedy.  "It is . . . well settled that a court of equity has no jurisdiction over the appointment and removal of

public officers." *Sawyer*, 124 U.S. at 212. Instead, "[t]he jurisdiction to determine the title to a public office belongs exclusively to the courts of law"—for instance, through suits for back pay. *Id.*

Thus, "the power of a court of equity to restrain by injunction the removal of a [public] officer has been denied in many well-considered cases." *Id.*; *see, e.g.*, *Baker v. Carr*, 369 U.S. 186, 231 (1962) (decisions that "held that federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" or that "withheld federal equity from staying removal of a federal officer" reflect "a traditional limit upon equity jurisdiction"); *Walton v. House of Representatives*, 265 U.S. 487, 490 (1924) ("A court of equity has no jurisdiction over the appointment and removal of public officers[.]"); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898) ("[T]o sustain a bill in equity to restrain . . . the removal of public officers, is to invade the domain of the courts of common law, or of the executive and administrative department of the Government."); *White v. Berry*, 171 U.S. 366, 377 (1898) ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another."); *see also Bessent v. Dellinger*, 145 S. Ct. 515, 517 (2025) (Gorsuch, J., dissenting) (observing that "courts of equity at the time of the founding were apparently powerless" to stop the removal of executive officers).

*Marbury v. Madison*, 5 U.S.C. (1 Cranch) 137 (1803), is inapposite. *Marbury* concerned the separation of powers and President Madison's intrusion on the judiciary. That case concerned a justice of peace from this District. *Id.* at 154. The Court noted that the "[t]he constitution vests the whole judicial power of the United States in one supreme court, and such inferior courts as congress shall, from time to time, ordain and establish." *Id.* at 173. *Marbury* involved a request for mandamus—a *legal*, not equitable, remedy that is discussed further below. It cannot be

stretched to extend to equitable reinstatement of an individual within the executive branch, as has long been recognized. *See, e.g.*, *White*, 171 U.S. at 377 (confirming that an injunction to "restrain an executive officer from making a wrongful removal of a subordinate appointee" is impermissible).

### B.    Plaintiffs Are Not Entitled to a Permanent Injunction.

Even if reinstatement were a remedy within this Court's equitable powers, a preliminary or permanent injunction is an "extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Green*, 553 U.S. 674, 689–90 (2008). To establish entitlement to a permanent injunction, Plaintiffs must demonstrate: "'(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023). Plaintiffs fail to demonstrate entitlement to a permanent injunction.

### 1.    *Plaintiffs Have Not Suffered an Irreparable Injury or Demonstrated Inadequate Remedies.*

Plaintiffs have not suffered an irreparable injury because backpay is the routine remedy for improper discharges and, if Plaintiffs were to prevail here, may be available to them. The "high standard for irreparable injury" requires a two-fold showing by Plaintiffs: First, because an irreparable injury "must be both certain and great," Plaintiffs "must show '[t]he injury complained of is of such imminence that there is a "clear and present" need for equitable relief to prevent irreparable harm.'" *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir.

2006) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  And second, "the injury must be beyond remediation." *Id.*

Plaintiffs have failed to meet their burden for either of the two required showings.  Being deprived of the ability to serve as a Senate-confirmed Board member does not amount to irreparable harm.  *See Sampson v. Murray*, 415 U.S. 61, 92 & n.68 (1974) (holding that, except in "genuinely extraordinary situation," loss of income, face, and reputation do not amount to irreparable harm); *see also Dellinger v. Bessent*, No. 25-5052, 2025 WL 717383, at *1 (D.C. Cir. Mar. 5, 2025) (staying district court's order and thereby "giv[ing] effect to the removal of appellee from his position as Special Counsel of the U.S. Office of Special Counsel").  Indeed, court after court in this Circuit and others has concluded that loss of employment does not constitute irreparable harm.  *See, e.g.*, *Hetreed v. Allstate Ins. Co.*, 135 F.3d 1155, 1158 (7th Cir. 1998); *Davis v. Billington*, 76 F. Supp. 3d 59, 65–66 (D.D.C. 2014) (collecting cases); *Farris v. Rice*, 453 F. Supp. 2d 76, 79–80 (D.D.C. 2006) ("cases are legion holding that loss of employment does not constitute irreparable injury").

To the extent that Plaintiffs attempt to distinguish their case from a "routine case," courts have repeatedly rejected the notion that the deprivation of a unique, singular, or high-level position is any more of an irreparable injury.  *See Hetreed*, 135 F.3d at 1158 (loss of position as senior manager leading audit department not irreparable injury); *Marxe v. Jackson*, 833 F.2d 1121, 1122 (3d Cir. 1987) (division manager); *Rubino v. City of Mount Vernon*, 707 F.2d 53 (2d Cir. 1983) (mayoral-appointed City Assessor); *Franks v. Nimmo*, 683 F.2d 1290, 1291 (10th Cir. 1982) (Associate Chief of Staff for Research and Development position at Department of Veterans Affairs Medical Center); *EEOC v. City of Janesville*, 630 F.2d 1254, 1256 (7th Cir. 1980) (Chief of Police); *Levesque v. Maine*, 587 F.2d 78, 79 (1st Cir. 1978) (Maine Commissioner of

Manpower); *Nichols v. Agency for Int'l Dev.*, 18 F. Supp. 2d 1, 2, 4 (D.D.C. 1998) (Chief of Information Management Systems, Office of Inspector General); *Burns v. U.S. Gen. Acct. Off. Emps. Fed. Credit Union*, Civ. A. No. 88-3424, 1988 WL 134925, at *1–2 (D.D.C. Dec. 2, 1988) (President of Credit Union Board of Directors).  Accordingly, when principal officers have been removed from their posts, they generally have challenged those removals in suits for back pay, as has been explained above.  *See Humphrey's Ex'r*, 295 U.S. at 618 (challenge sought "to recover a sum of money alleged to be due"); *Myers*, 272 U.S. at 106 (same); *Wiener*, 357 U.S. at 349–51 (same).

Plaintiffs rely primarily on two district court decisions that have been stayed by the D.C. Circuit.  Pls.' Br. (ECF No. 10-1) at 47 (citing *Dellinger v. Bessent*, Civ. A. No. 25-0385 (ABJ), 2025 WL 665041, at *32 (D.D.C. Mar. 1, 2025), *appeal dismissed*, No. 25-5052, 2025 U.S. App. LEXIS 7222 (D.C. Cir. Mar. 27, 2025); also citing *Wilcox v. Trump*, Civ. A. No. 25-0334 (BAH), 2025 WL 720914, at *15 (D.D.C. Mar. 6, 2025), *stayed*, No. 25-5057, 2025 U.S. App. LEXIS 7301 (D.C. Cir. Mar. 28, 2025)).  Neither decision supports Plaintiffs' position.

First, as an initial matter, unlike this case, both district court cases involved a statutory restriction on the President's removal power.  *See, e.g.*, *Dellinger*, 2025 WL 665041, at *10 ("[B]y statute, '[t]he Special Counsel may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office.'" (quoting 5 U.S.C. § 1211(b))); *Wilcox*, 2025 WL 720914, at *4 ("[T]he Board is protected from removal at-will by the President, who is authorized to remove a Board member "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause[.]" (quoting 29 U.S.C. § 153(a))).  This case stands in a fundamentally different posture due to the lack of any similar restriction on the President's removal authority in the statute at issue here.  *See generally* 42 U.S.C. § 2000ee.

Second, the D.C. Circuit stayed the district courts' orders in both *Dellinger* and *Harris/Wilcox*. In those stay orders, the Court rejected the sorts of arguments that Plaintiffs make here. *See Harris*, 2025 U.S. App. LEXIS 7301, at *44–48 (Walker, J., concurring) (rejecting irreparable harm arguments based on statutory right to hold office and agencies' interest in fulfilling their functions); *id.* at *57–62 (Henderson, J, concurring) (similar); *Dellinger v. Bessent*, No. 25-5052, 2025 WL 887518, at *4 (D.C. Cir. Mar. 10, 2025) (similar). As the D.C. Circuit explained, to justify a permanent injunction, a plaintiff must "make a showing of irreparable injury sufficient in kind and degree to override the factors cutting against the general availability of injunctions in Government personnel cases." *Id.* (quoting *Sampson*, 415 U.S. at 84). This case, which does not involve any sort of statutory prohibition on the President's removal authority, is hardly a "genuinely extraordinary" case, and public officials have no individual right to the powers of their offices. *See Raines v. Byrd*, 521 U.S. 811, 820–21 (1997) ("loss of political power" not irreparable harm); *Barnes v. Kline*, 759 F.2d 21, 50 (D.C. Cir. 1984) (Bork, J., dissenting) (notion that officials "have a separate private right, akin to a property interest, in the powers of their offices" is "alien to the concept of a republican form of government"). Further, Plaintiffs had an adequate remedy, backpay—deleted from their Amended Complaint—which would have been available if Plaintiffs prevailed, further demonstrating that they are not being irreparably harmed.

In addition to the *Dellinger* and *Wilcox* decisions, Plaintiffs rely (at 35, 38, 39, 40) on a much-older district court case that is plainly distinguishable and was later vacated by the D.C. Circuit: *Berry v. Reagan*, Civ. A. No. 83-3182, 1983 WL 538, at *5 (D.D.C. Nov. 14, 1983), *vacated*, 732 F.2d 949 (D.C. Cir. 1983). In *Berry*, President Reagan removed several members of the Commission on Civil Rights, an action that left the Commission without a quorum and meant that it could not complete a report it was statutorily required to complete by a date certain. *Id.*

at *1, *5.  As Judge Henderson recently explained, "[n]eedless to say, we are not bound by a vacated district court decision from 40 years ago."  *Harris*, 2025 U.S. App. LEXIS 7301, at *60.  And in any event, Plaintiffs and the Board are not similarly situated to the plaintiffs in *Berry* for at least three reasons.

First, the Board—which has had long stretches of its short history where it has not had a quorum, *see, e.g.*, PCLOB, *Congressional Budget Justification: Fiscal Year 2023*, at 3 [https://documents.pclob.gov/prod/Documents/FinancialReport/40/PCLOB%20FY%202023%20Congressional%20Budget%20Justification%20-%20508,%20Mar%2016,%202022%200940.pdf](https://documents.pclob.gov/prod/Documents/FinancialReport/40/PCLOB%20FY%202023%20Congressional%20Budget%20Justification%20-%20508,%20Mar%2016,%202022%200940.pdf) ("PCLOB 2023 Budget Justification")—continues to operate without a quorum.[2]  As was the case previously, "[d]espite its sub-quorum status, the PCLOB continues to fulfill its mission through a vigorous agenda, continuing several projects and issuing required legal and compliance reports (except for the Semi-Annual Report, which requires a quorum)."  *Id.*  "Additionally, the remaining Board Members can perform the same duties in the sub-quorum period, such as providing advice to agencies in their individual official capacities."  *Id.*; *see also id.* (listing the many ways in which the Board continues to fulfill its function and even grow in a sub-quorum status).  Indeed, the Board's organic statute includes no statutory restrictions tied to whether it has a quorum or not.  *See* 42 U.S.C. § 2000ee(h)(5).  Accordingly, Plaintiffs and the Board "are not similarly situated" to the plaintiff in *Berry* because the Board "is not and will not be shuttered; it continues to operate."  *English v. Trump*, 279 F. Supp. 3d 307, 335 (D.D.C. 2018).

Second, in *Berry*, the harm was irreparable in part because the commission was set to expire.  *Berry*, 1983 WL 538, at *5.  But here, the Board will not cease to exist and may resume

---

[2]       In fact, the Plaintiffs in this case were the only two members of the Board during the most recent sub-quorum period cited in the 2023 Congressional Budget Justification.  *See* PCLOB 2023 Budget Justification, *supra*, at 4 (listing Plaintiffs LeBlanc and Felten as the only then-current members).

full functioning—in addition to the many tasks it fulfills when in a sub-quorum status—upon the resumption of a quorum.  *See* PCLOB 2023 Budget Justification, *supra*, at 3.

Third, like in *English*, "any such harm" to Plaintiffs coming solely from their not functioning as a Member of the Board "can be remediated in the ordinary" manner, *English*, 279 F. Supp. 3d at 335, were it not for Plaintiffs' voluntary decision to forgo the standard remedy in such cases when they amended the Complaint.  *See* Redlined Compl. (ECF No. 8-1) at 26.

Plaintiffs next argue (at 48) that denying them injunctive relief would have a disruptive effect on the Board because of an update to a report being prepared concerning Section 702 of the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1881a.  As an initial matter, less than two years ago, the Board prepared a thorough report of approximately 300 pages regarding Section 702, which the Board provided to the President and Congress.  *See* PCLOB, *Report on the Surveillance Program Operated Pursuant to Section 702 of the Foreign Intelligence Surveillance Act*, Sept, 28, 2023,    https://documents.pclob.gov/prod/Documents/OversightReport/054417e4-9d20-427a-9850-862a6f29ac42/2023%20PCLOB%20702%20Report%20(002).pdf    ("PCLOB    2023 Section 702 Report").  Both Plaintiffs were able to express their views in that report.  *Id.* at iv. Even if Plaintiffs could demonstrate any harm concerning the preparation of an update to the 2023 Section 702 report, "the remaining Board Members can perform the same duties in the sub-quorum period, such as providing advice to agencies in their individual official capacities."  PCLOB 2023 Budget Justification, *supra*, at 3.

Unlike in *Berry*, the Board can continue to fulfill its mandate without Plaintiffs, since it has significant authority to continue to operate in sub-quorum status and, in any event, could once again have all its seats filled through the appointment and confirmation of different individuals to Plaintiffs' seats.  Plaintiffs' fears that any ensuing Section 702 report may not adequately reflect

their views are speculative and no basis for finding irreparable harm. *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 298 (rejecting claimed injury as "far too speculative to warrant preliminary injunctive relief"). But they, regardless, already presented their views on Section 702 in a report issued not even two years ago. Plaintiffs' desire for their views specifically to be incorporated in any ensuing report is not cognizable and does not give rise to irreparable harm.

2.    *The Balance of Equities and Public Interest Favor Defendants.*

The balance of the equities and public interest weigh strongly against Plaintiffs' reinstatement as Members of the Board. Because the Board is an executive agency exercising executive power, an injunction functionally reinstating one of its principal officers would raise grave separation-of-powers concerns and work a great and irreparable harm to the Executive. The President cannot be compelled to retain the services of principal officers within the Executive if the President no longer believes they should be entrusted with the exercise of executive power. Such a remedy would undermine the accountability of the Executive Branch enshrined in the Constitution. The President "is elected by the entire Nation" and all executive officers "remain[ ] subject to the ongoing supervision and control of the elected President." *Seila L.*, 591 U.S. at 224. Adding further exceptions to that constitutional rule—and then reinstating principal officers subject to those additional exceptions—"heightens the concern that" the Executive Branch "may slip from the Executive's control, and thus from that of the people." *Free Enter.*, 561 U.S. at 499.

The "Government has traditionally been granted the widest latitude in the 'dispatch of its own internal affairs.'" *Sampson*, 415 U.S. at 83 (quoting *Cafeteria & Rest. Workers Union, Local 473, A.F.L.-C.I.O. v. McElroy*, 367 U.S. 886, 896 (1961)). And it is especially important that the President, with the advice and consent of the current Senate, be granted latitude to oversee the Board, which performs a noble role in ensuring that the Executive Branch respects and protects the privacy rights of Americans. *See Seila L.*, 591 U.S. at 204.

Plaintiffs' claimed equities cannot outweigh the grave and unprecedented harm an injunction would cause to the separation of powers and the President's authority to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.

### C.    Plaintiffs Are Not Entitled to Mandamus Relief.

Finally, Plaintiffs' additional request for mandamus is likewise inappropriate.  "Mandamus is available only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff."  *Langeman v. Garland*, 88 F.4th 289, 298 (D.C. Cir. 2023) (internal quotation marks omitted; quoting *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)).  The writ of mandamus "is a 'drastic and extraordinary' remedy 'reserved for really extraordinary causes.'"  *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947)).  Further, mandamus is "inappropriate except where a public official has violated a 'ministerial' duty."  *Consol. Edison Co. v. Ashcroft*, 286 F.3d 600, 605 (D.C. Cir. 2002).  And it "is to be granted only in the exercise of sound discretion."  *13th Reg'l Corp. v. Dep't of Interior*, 654 F.2d 758, 760 (D.C. Cir. 1980).

Here, Plaintiffs fail at all three prongs and have not demonstrated that they are entitled to this drastic and extraordinary remedy.

First, for all the reasons stated previously, Plaintiffs do not have a clear right to relief.

Second, the President's determination of who should be entrusted with the authorities of a principal executive officer is anything but ministerial.  Plaintiffs have not established that the Defendants owe them a "clear nondiscretionary duty" to reinstate them, rather than to award backpay, for example.  Indeed, the Board's organic statute contemplates there being vacancies on the Board and anticipates that, once a vacancy occurs, for any reason whatsoever, it "shall be filled in the manner in which the original appointment was made," 42 U.S.C. § 2000ee(h)(4)(C)—i.e., through "appoint[ment] by the President, by and with the advice and consent of the Senate," *id.*

31

§ 2000ee(h)(1), (h)(2).  Reinstatement would at least arguably violate that provision—which demonstrates that Defendants owe Plaintiffs no "clear nondiscretionary duty" to effect reinstatement.

Third, if Plaintiffs' removals were improper, then they would have an adequate remedy available to them—namely, backpay for the duration of their terms.  *See, e.g.*, *Humphrey's Ex'r*, 295 U.S. at 618 (permitting a suit premised on an improper removal for "a sum of money alleged to be due the deceased for salary as a Federal Trade Commissioner").  The fact that Plaintiffs have voluntarily elected to forgo this remedy, *see* Redlined Compl. (ECF No. 8-1) at 26, does not mean that it would have been unavailable.  Indeed, Plaintiffs previously sought that remedy.  *See* Compl. (ECF No. 1) at 26.  Plaintiffs' decision to change the relief they sought does not entitle them to mandamus relief.

Even if Plaintiffs somehow overcame these obstacles to relief, mandamus would not be an exercise of "sound discretion" here.  As Judge Walker recently explained, "[t]he forcible reinstatement of a presidentially removed principal officer disenfranchises voters by hampering the President's ability to govern during the four short years the people have assigned him the solemn duty of leading the executive branch."  *Harris*, 2025 U.S. App. LEXIS 7301, at *48–49 (Walker, J., concurring in grant of stay).  No court should take that intrusive step—and certainly not where Congress, the other democratically accountable branch, has not even enacted statutory restrictions on removal.

*    *    *

**CONCLUSION**

For the reasons discussed above, the Court should grant Defendants' cross-motion for summary judgment, deny Plaintiffs' motion for summary judgment, and enter summary judgment in favor of Defendants.

Dated: April 3, 2025                    Respectfully submitted,

                                        YAAKOV M. ROTH
                                        Acting Assistant Attorney General
                                        Civil Division

                                        EMILY HALL
                                        Counsel to the Assistant Attorney General
                                        Civil Division
                                        United States Department of Justice
                                        950 Pennsylvania Avenue NW
                                        Washington, DC 20530
                                        Tel: (202) 307-6482
                                        emily.hall@usdoj.gov

                                        EDWARD R. MARTIN, JR., D.C. Bar #481866
                                        United States Attorney

                                        By:        /s/ *Douglas C. Dreier*
                                        DOUGLAS C. DREIER, D.C. Bar #1020234
                                        Assistant United States Attorney
                                        601 D Street, NW
                                        Washington, DC 20530
                                        (202) 252-2551

                                        *Attorneys for the United States of America*