UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRAVIS LEBLANC, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 25-0542 (RBW) |
| UNITED STATES PRIVACY AND CIVIL LIBERTIES OVERSIGHT BOARD, et al., | |
| Defendants. | |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

ARGUMENT ........................................................................................................................... 1

I.   BOARD MEMBERS MAY BE REMOVED BY THE PRESIDENT. ................................. 1

   A.   Plaintiffs' Opposition Does Not Dispute the Absurd Results That Arise from Their Interpretation of the Board's Organic Statute. .......................................................... 1

   B.   The Statutory Text Does Not Impose Removal Protections. ......................................... 3

   C.   The 2007 Statutory Changes Did Not Create Removal Protections. ............................. 7

   D.   The Structure and Function of the Board Do Not Imply Removal Protections. ............. 9

   E.   The Canon of Constitutional Avoidance Suggests That the President May Remove Board Members for Cause or at Will. ...................................................................... 14

II.  EVEN IF CONGRESS DID RESTRICT REMOVAL OF BOARD MEMBERS, PLAINTIFFS ARE NOT ENTITLED TO REINSTATEMENT. ........................................... 16

   A.   De Facto Reinstatement Is Not Available Here. ......................................................... 16

   B.   Plaintiffs Are Not Entitled to a Permanent Injunction. ................................................ 18

   C.   Plaintiffs Are Not Entitled to Mandamus Relief. ........................................................ 20

CONCLUSION ..................................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Baker v. Carr*,
    369 U.S. 186 (1962) ................................................................. 16

*Bowsher v. Synar*,
    478 U.S. 714 (1986) ................................................................... 2

*Coleman v. Burnett*,
    477 F.2d 1187 (D.C. Cir. 1973) ............................................... 17

*Collins v. Yellen*,
    594 U.S. 220 (2021) ................................................................... 6

*Conn. Nat'l Bank v. Germain*,
    503 U.S. 249 (1992) ................................................................... 5

*Dalton v. Specter*,
    511 U.S. 462 (1994) ................................................................. 20

*Deming Hosp. Corp. v. NLRB*,
    665 F.3d 196 (D.C. Cir. 2011) ................................................. 19

*Fed. Election Comm'n v. NRA Pol. Victory Fund*,
    6 F.3d 821 (D.C. Cir. 1993) ................................................. 5, 11

*Flast v. Cohen*,
    392 U.S. 83 (1968) ................................................................... 15

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ................................................................... 9

*Greer v. Paulson*,
    505 F.3d 1306 (D.C. Cir. 2007) ............................................... 17

*Harkrader v. Wadley*,
    172 U.S. 148 (1898) ................................................................. 16

*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935) ............................................. 10, 11, 15, 19

*In re Sawyer*,
    124 U.S. 200 (1888) ................................................................. 16

*INS v. Chadha*,
    462 U.S. 919 (1983) ................................................................... 2

*Jama v. Immigr. & Customs Enf't*,
    543 U.S. 335 (2005) ................................................................. 19

\* *Kalaris v. Donovan*,
    697 F.2d 376 (D.C. Cir. 1983) ............................................................... 2, 6, 7, 10

*Klayman v. Jud. Watch, Inc.*,
    6 F.4th 1301 (D.C. Cir. 2021) ............................................................... 17

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ............................................................... 20

*Marx v. Gen. Revenue Corp.*,
    568 U.S. 371 (2013) ............................................................... 5

*Morrison v. Olson*,
    487 U.S. 654 (1988) ............................................................... 13, 14, 16

*Myers v. United States*,
    272 U.S. 52 (1926) ............................................................... 2, 3, 6, 19, 20

*Omar v. McHugh*,
    646 F.3d 13 (D.C. Cir. 2011) ............................................................... 17

*Parsons v. United States*,
    167 U.S. 324 (1897) ............................................................... 4, 19-20

*Pub. Serv. Elec. & Gas Co. v. FERC*,
    783 F.3d 1270 (D.C. Cir. 2015) ............................................................... 15

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
    547 U.S. 47 (2006) ............................................................... 7, 8

*Sampson v. Murray*,
    415 U.S. 61 (1974) ............................................................... 16

*SEC v. Blinder, Robinson & Co.*,
    855 F.2d 677 (10th Cir. 1988) ............................................................... 5

\* *Seila L. LLC v. Consumer Fin. Prot. Bureau*,
    591 U.S. 197 (2020) ............................................................... 6, 9, 11, 13, 15

\* *Severino v. Biden*,
    71 F.4th 1038 (D.C. Cir. 2023) .................... 1, 3, 4, 5, 10, 12, 13, 14, 15, 16, 17, 21

*Shurtleff v. United States*,
    189 U.S. 311 (1903) ............................................................... 19

*Swan v. Clinton*,
    100 F.3d 973 (D.C. Cir. 1996) ............................................................... 10, 16, 17

*Vitarelli v. Seaton*,
    359 U.S. 535 (1959) ............................................................... 16

*Walton v. House of Representatives*,
  265 U.S. 487 (1924) ............................................................................... 16

*Webster v. Doe*,
  486 U.S. 592 (1988) ............................................................................... 16

*White v. Berry*,
  171 U.S. 366 (1898) ............................................................................... 16

*Wiener v. United States*,
  357 U.S. 349 (1958) ............................................................................... 19

*Williams v. Pharmacia, Inc.*,
  137 F.3d 944 (7th Cir. 1998) ................................................................ 17

*Wilson v. DNC Servs. Corp.*,
  831 F. App'x 513 (D.C. Cir. 2020) ...................................................... 17

**Statutes and Constitutional Provisions**

5 U.S.C. § 403 ............................................................................................ 12

5 U.S.C. § 595 ............................................................................................ 10

12 U.S.C. § 5491 ................................................................................... 6, 11

15 U.S.C. § 78d .......................................................................................... 5

31 U.S.C. § 702 ..................................................................................... 9, 12

\* 42 U.S.C. § 2000ee ......................... 1, 2, 3, 4, 6, 8, 9, 10, 11, 12, 13, 14, 15, 19, 20, 21

42 U.S.C. § 2286 ........................................................................................ 9

52 U.S.C. § 30106 ...................................................................................... 5

Implementing Recommendations of the 9/11 Commission Act of 2007,
  Pub. L. No. 110-53, 121 Stat. 266 ............................................... 3, 7, 8, 9

Intelligence Reform & Terrorism Prevention Act of 2004,
  Pub. L. No. 108-458, 118 Stat. 3638 .................................................. 7, 8

Reforming Intelligence and Securing America Act of 2024,
  Pub. L. No. 118-49, 138 Stat. 862 ......................................................... 19

U.S. Const. art. ii, § 2, cl. 2 ..................................................................... 16

**Rules**

Fed. R. Evid. 801 ...................................................................................... 17

Defendants respectfully submit this reply in further support of their cross-motion for summary judgment (ECF No. 12).  Because 42 U.S.C. § 2000ee does not limit the President's removal authority, the President lawfully removed Plaintiffs from the U.S. Privacy and Civil Liberties Oversight Board ("Board" or "PCLOB").

## ARGUMENT

"[R]emoval at will is the presumption under the Constitution," *Severino v. Biden*, 71 F.4th 1038, 1040 (D.C. Cir. 2023), and Congress put nothing in the text of the Board's organic statute, 42 U.S.C. § 2000ee, that constrains the President's presumptive removal authority here.  Unlike certain statutes of other agencies limiting removal to cases of "inefficiency, neglect of duty, or malfeasance," or even those limiting removal to cases generally "for cause," the Board's statute contains no such language.

Plaintiffs cannot meaningfully grapple with these principles of law and fact.  As a result, they spend pages trying to convince this Court that Congress must have intended to do something it did not do.  They then ask the Court to push the law in unprecedented territory, by divining unspecified removal protections for an Article II agency that does not legislate, regulate, or adjudicate, and that instead serves to advise the President and other Executive Branch agencies on issues of counterterrorism.  Plaintiffs' arguments must fail.

## I.    BOARD MEMBERS MAY BE REMOVED BY THE PRESIDENT.

### A.    Plaintiffs' Opposition Does Not Dispute the Absurd Results That Arise from Their Interpretation of the Board's Organic Statute.

Plaintiffs' opposition does not disclaim their argument's logical conclusion: Congress, either by saying "shall serve a term" or by omitting certain language when the statute was overhauled, rendered Board Members unremovable *for any reason*.  *See* 42 U.S.C. § 2000ee. Plaintiffs' argument offers no statutory basis for distinguishing a protection from removal at will

from a protection from removal for any particular cause.  Plaintiffs cannot avoid that Congress did not purport to limit the President's authority to remove Board Members, so the "implication must be, in the absence of any express limitation respecting removals, that as [the President's] selection of administrative officers is essential to the execution of the laws by him, so must be his power of removing those for whom he cannot continue to be responsible."  *Myers v. United States*, 272 U.S. 52, 117 (1926); *see also Kalaris v. Donovan*, 697 F.2d 376, 401 (D.C. Cir. 1983) ("The long-standing rule relating to the removal power is that, in the face of congressional silence, the power of removal is incident to the power of appointment.").

Plaintiffs do not suggest that their argument is limited only to precluding at-will removals of Board Members.  *See* Pls.' Opp'n at 22 n.2.[1]  If "[i]t is the phrase 'shall serve' that invests members with a definite period of service," Pls.' Opp'n (ECF No. 15) at 19, then *any* removal of a Board Member by the President would violate Congress's command that Board Members "shall serve a term of 6 years."  42 U.S.C. § 2000ee(h)(4)(A).  This cannot be, and it is Plaintiffs' interpretation, not Defendants', "that is a truly absurd reading of the statute."  Pls.' Opp'n at 33.

Plaintiffs attempt to mitigate the absurd conclusion of their argument by focusing on Congress's impeachment power, *see id.* at 22 n.2; however, the Supreme Court has held that "Congress cannot reserve for itself the power of removal of an officer charged with the execution of the laws except by impeachment."  *Bowsher v. Synar*, 478 U.S. 714, 726 (1986).  "To permit the execution of the laws to be vested in an officer answerable only to Congress would, in practical terms, reserve in Congress control over the execution of the laws."  *Id.*  "This kind of congressional control over the execution of the laws, *Chadha* makes clear, is constitutionally impermissible."  *Id.* at 726–27 (citing *INS v. Chadha*, 462 U.S. 919, 954–55 (1983)).

---

[1]    Throughout their filings, Defendants refer to the CM/ECF pagination and not the pagination in the footers.

Plaintiffs' other arguments, likewise divorced from the statutory text, fare no better. If the "eliminat[ion of] language stating that members served 'under the general supervision of the President'" meant that the President could not exercise his removal power, Pls.' Opp'n at 10, then it would not matter why the President was removing a Board Member: any removal would be prohibited because it would constitute presidential supervision.

Plaintiffs' silence regarding the limits of their argument is deafening. It is not the Court's role to define the contours of removal protections that Congress elected not to include, and the absence of any such protections in the statutory text resolves this case. *See Myers*, 272 U.S. at 117; *see also Severino*, 71 F.4th at 1044 ("Courts will not assume Congress legislated a potential separation of powers problem unless the statutory text makes Congress's intent to test constitutional lines apparent."). And it is particularly absurd to believe that Congress, in the 2007 statutory overhaul, intended to prohibit removal of Board Members without cause when that same law removed all Board Members then in office without cause. *See* Implementing Recommendations of the 9/11 Commission Act of 2007 ("2007 Law"), Pub. L. No. 110-53, § 801(c)(1)(B), 121 Stat. 266, 357 ("The term of any individual who is a member of the Privacy and Civil Liberties Oversight Board on the date of enactment of this Act shall terminate 180 days after the date of enactment of this Act.").

### B.    The Statutory Text Does Not Impose Removal Protections.

Plaintiffs' primary attempt to find a textual hook in the statute for removal protections is a simple term length provision stating that Board Members "shall serve a term of 6 years." 42 U.S.C. § 2000ee(h)(4)(A). As the D.C. Circuit has explained, "[w]hen used in federal appointment statutes, the word 'term' has a long-settled meaning of limiting a person's tenure in office, not investing the person with a guaranteed minimum period of service." *Severino*, 71 F.4th at 1045.

Thus, "[a] 'term,' in other words, is a ceiling, not a floor, on the length of service." *Id.* Accordingly, Plaintiffs "do not argue that the word 'term' does that work"—i.e., mandate removal protections—but instead argue that "[i]t is the phrase 'shall serve' that invests members with a definite period of service." Pls.' Opp'n at 19.

But "shall serve" what? The statute explains: Board Members "shall serve a term of 6 years." 42 U.S.C. § 2000ee(h)(4)(A). Reading the provision as a whole therefore makes clear that this term-length provision, like others courts have considered, does not offer Board Members protection from removal. If anything, the "shall" language is a command directed at Board Members themselves—but Board Members are not required to serve out the entirety of their terms. Indeed, both Plaintiff Felten and Plaintiff LeBlanc began their PCLOB service after previous Board Members left the Board before their terms were up. *See* PCLOB, *Board Members*, https://www.pclob.gov/Board/Index (last accessed Apr. 23, 2025) (identifying term lengths for all former Board Members, with only one other former Board Member, Elisebeth B. Collins, ever, in the entire history of the Board, serving a full six-year term).

Plaintiffs' effort to distinguish *Parsons v. United States*, 167 U.S. 324 (1897), fails. *See* Pls.' Opp'n at 19–21. The provision in *Parsons* was that "[d]istrict attorneys shall be appointed for a term of four years and their commissions shall cease and expire at the expiration of four years from their respective dates," *Parsons*, 167 U.S. at 327–28, whereas the Board's organic statute provides that Board Members "shall serve a term of 6 years." 42 U.S.C. § 2000ee(h)(4)(A). Just like the relevant provision in the Board's organic statute, this is a mere term length provision. *See Parsons*, 167 U.S. at 343 (rejecting argument that this provision "grant[s] an unconditional and absolute term of four years, which cannot be shortened by the president"). This does not entitle

the Board Member to remain in office for the duration of the term if the President sees fit to remove him. *Severino*, 71 F.4th at 1045.

Plaintiffs analogize to other statutory provisions concerning the Federal Election Commission or the Securities and Exchange Commission. *See* Pls.' Opp'n at 21–22. But they do not (and cannot) assert that any court has found that these provisions prevent at-will removal of Commissioners. To the contrary, courts have simply *assumed* that such Commissioners enjoy some tenure protection. *See, e.g.*, *Fed. Election Comm'n v. NRA Pol. Victory Fund*, 6 F.3d 821, 826 (D.C. Cir. 1993) ("[W]e can safely assume that the President would at minimum have authority to discharge a commissioner for good cause—if for no other."); *SEC v. Blinder, Robinson & Co.*, 855 F.2d 677, 681 (10th Cir. 1988) ("[F]or the purposes of this case, we accept appellants' assertions in their brief, that it is commonly understood that the President may remove a commissioner only for 'inefficiency, neglect of duty or malfeasance in office.'"). The Court need not opine on different statutory schemes for different agencies that are not at issue in this case, especially when the language of those statutes differs from the language here. *See, e.g.*, 15 U.S.C. § 78d(a); 52 U.S.C. § 30106(a).

Plaintiffs also invoke the canon against surplusage and note that Congress has, at times, clearly caveated term length language by noting the President's removal power. *See* Pls.' Opp'n at 22–23. But "the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme," which is not the case here. *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both.'" (citation omitted)). Different Congresses from different eras use different language at different times.

Plaintiffs briefly urge that additional language in 42 U.S.C. § 2000ee(h)(4)(D) gives them a textual hook: "Upon the expiration of the term of office of a member, the member may continue to serve for up to one year after the date of expiration, at the election of the member . . . until the member's successor has been appointed and qualified." *See* Pls.' Opp'n at 21. But this argument suffers from similar problems. The text gives the Board Member the ability to elect to serve up to one additional year, but it does not include any restriction on the President's removal authority within that timeframe. The absence of any language limiting the President's removal power resolves this case. *See, e.g.*, *Myers*, 272 U.S. at 117; *Kalaris*, 697 F.2d at 401.

Finally, Plaintiffs urge that Congress's inclusion of the phrase "independent agency within the executive branch" provides a clear indication of removal protections. Pls.' Opp'n at 23. Plaintiffs concede that "the term 'independent' does not invariably signal intent to confer independence from the President." *Id.*; *see Collins v. Yellen*, 594 U.S. 220, 248 (2021) ("[D]escribing an agency as independent would be an odd way to signify that its head is removable only for cause because even an agency head who is shielded in that way would hardly be fully 'independent' of Presidential control."). Plaintiffs' reliance on *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020), is curious, as that case held that the agency's independence from the Executive Branch in that case violated the separation of powers. *Id.* at 238 ("In our constitutional system, the executive power belongs to the President, and that power generally includes the ability to supervise and remove the agents who wield executive power in his stead. . . . The Constitution requires that such officials remain dependent on the President, who in turn is accountable to the people."). And in any event, the statute at issue in *Seila Law* limited the President's removal authority to instances of "inefficiency, neglect of duty, or malfeasance in office." *Id.* at 207 (quoting 12 U.S.C. § 5491(c)(3)). Congress elected not to include similar

language here, and "in the face of congressional silence, the power of removal is incident to the power of appointment." *Kalaris*, 697 F.2d at 401.

### C.    The 2007 Statutory Changes Did Not Create Removal Protections.

Foreclosed by the statutory text, Plaintiffs then turn to statutory history—namely, the 2007 overhaul of the Board's organic statute, to claim that the deletion of some statutory text impliedly added removal protections.  As an initial matter, Plaintiffs' excerpt of just one particular sentence fragment to note that some language was not fully overhauled, *see* Pls.' Opp'n at 16, obscures the extent of the myriad changes with the 2007 Law.  *Compare* Intelligence Reform & Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 1061, 118 Stat. 3638, 3684–3688, *with* 2007 Law, Pub. L. No. 110-53, § 801(a), 121 Stat. 266, 352–58.[2]

Considering the scope of changes in total ensures that the Court's interpretation of the statute does not "render[ ] 'a legislative change' a nullity," which is the reason for the canon Plaintiffs invoke.  Pls.' Br. (ECF No. 10-1) at 31; *see also Rumsfeld v. F. for Acad. & Institutional Rts., Inc.* (*FAIR*), 547 U.S. 47, 57–58 (2006) ("We refuse to interpret the Solomon Amendment in a way that negates its recent revision, and indeed would render it a largely meaningless exercise."). This is not an instance where Congress passed a law and the revision—let alone the sole revision— was to delete language stating clearly that the President may remove the head of the agency at will. Such a narrow, targeted amendment did not occur here.  Congress completely overhauled the Board's organic statute, and it still elected not to include language limiting removal.  *See* App'x (attached).

---

[2]    For ease of the Court's review, Defendants have included a redline comparing the laws as an appendix to this reply (attached).

For instance, Plaintiffs make much of the deletion of language that "members of the Board shall each serve at the pleasure of the President," but examining this deletion in context demonstrates that what Congress was considering was the way Board Members are appointed:

> (C) APPOINTMENT REQUIREMENTS.—Any individual appointed to "(2) QUALIFICATIONS.—Members of the Board shall be appointed from among trustworthy and distinguished citizens outside the Federal Government who are qualifiedselected solely on the basis of achievement,their professional qualifications, achievements, public stature, expertise in civil liberties and privacy, and relevant experience, and independence.
>
> (D) FULL TIME SERVICE OF CHAIRMAN.—The chairman may serve on a full-time basis.
>
> (E) SERVICE AT PLEASURE OF PRESIDENT.—The chairman, vice chairman, and otherwithout regard to political affiliation, but in no event shall more than 3 members of the Board shall each serve atbe members of the same political party. The President shall, before appointing an individual who is not a member of the pleasure ofsame political party as the President, consult with the leadership of that party, if any, in the Senate and House of Representatives.

App'x at 7. There is no dispute that the 2007 Law mandated that no more than three Board Members may be members of the same political party and required the President to consult with the opposing party's congressional leadership in selecting Board Members of that party. 42 U.S.C. § 2000ee(h)(2). Thus, the change to this language is fully effective without implying removal restrictions Congress declined to include. Rather, deleting the "serve at the pleasure of the President" phrase was a sensible outgrowth of the fact that Congress was creating a body that exists outside the Executive Office of the President and includes members of varied political affiliation. The amendment thus was not "negate[d]," nor was it a "meaningless exercise." *See FAIR*, 547 U.S. at 57–58.

Similarly, Plaintiffs point to the deletion of the following language: "The Board shall perform its functions within the Executive Branch and under the general supervision of the President." Pls.' Opp'n at 16–17; *see also* App'x at 9. But the language that replaced this

provision was: "There is established as an independent agency within the executive branch a Privacy and Civil Liberties Oversight Board (referred to in this section as the 'Board')." 42 U.S.C. § 2000ee(a); *see also* App'x at 2. This change is not rendered a nullity by failing to imply removal protections. Rather, it merely confirmed that the Board was no longer located within the Executive Office of the President and was made "an independent agency within the executive branch," 42 U.S.C. § 2000ee(a), like many other agencies, *see, e.g.*, 42 U.S.C. § 2286.

Plaintiffs curiously rely on *Seila Law* and *Free Enterprise* to claim that deleting this language insinuates removal protections. *See* Pls.' Opp'n at 17. In both of those cases, the President's removal authority was upheld. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 513–14 (2010) ("The Constitution that makes the President accountable to the people for executing the laws also gives him the power to do so. That power includes, as a general matter, the authority to remove those who assist him in carrying out his duties."); *Seila L.*, 591 U.S. at 238 (similar). And in all events, Congress's amendment very much served a purpose: it moved the Board out from the Executive Office of the President and installed the Board as an "independent agency within the executive branch." 42 U.S.C. § 2000ee(a). Congress did not, however, state that the Board is an "agency independent from the executive branch." *See, e.g.*, 31 U.S.C. § 702(a) (explaining that the Government Accountability Office, an Article I agency, is an instrumentality "independent of the executive departments").

**D.    The Structure and Function of the Board Do Not Imply Removal Protections.**

Plaintiffs raise four arguments concerning the structure and function of the Board, which they say convey removal protection. These arguments fail.

First, the Board Members' staggered terms do not imply removal protections. In *Severino*, the D.C. Circuit addressed a statute that likewise created staggered terms and concluded that "Congress left no structural or contextual clues that protection from removal was integral, or even

desirable, to the performance of Council members within an advisory organization housed squarely in the Executive Branch." *Severino*, 71 F.4th at 1049–50. Plaintiffs cling to language in *Severino* that they interpret to mean that only the "initial batch of members" served staggered terms. *Id.* at 1049. But that was because the members of the Council overseeing the Administrative Conference of the United States could, as a result of other events, become unstaggered. *See* 5 U.S.C. § 595(b); *see also Severino*, 71 F.4th at 1049. Plaintiffs' assertion that the "statute [ ] had not required staggered terms for 60 years—since 1964, when the Conference was created" is thus incorrect. Pls.' Opp'n at 25.

In any event, the Board suffers from the same problem regarding its purported staggered terms. "Each member of the Board shall serve a term of 6 years, commencing on the date of the appointment of the member to the Board." 42 U.S.C. § 2000ee(h)(4)(A). Thus, when two (or more) Board Members are appointed on the same day, their terms are no longer staggered. *See id.* Indeed, Plaintiffs recognize that at least two Board Members had overlapping terms. *See* Pls.' Stmt. of Facts (ECF No. 10-2) ¶¶ 4, 12. But either way, staggered terms do not equate to removal protections omitted from the statutory text. *See, e.g.*, *Severino*, 71 F.4th at 1049–50; *Swan v. Clinton*, 100 F.3d 973, 975, 988 (D.C. Cir. 1996).

Second, Plaintiffs suggest that because Board Members' terms exceed the duration of a single presidential term, the Court should imply removal protections. Pls.' Opp'n at 25. But again, "[t]he long-standing rule relating to the removal power is that, in the face of congressional silence, the power of removal is incident to the power of appointment." *Kalaris*, 697 F.2d at 401. Plaintiffs cite to *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), to suggest that seven-year terms imply removal protections. Pls.' Opp'n at 25. But *Humphrey's Executor* included a textual removal restriction separate from its seven-year terms, as the statute there permitted removal only

for "inefficiency, neglect of duty, or malfeasance in office." *Humphrey's Ex'r*, 295 U.S. at 619. Such language is missing here. And as for *NRA Political Victory Fund*, the D.C. Circuit explicitly refused to decide the issue. *See NRA Pol. Victory Fund*, 6 F.3d at 826 ("[I]n any event, we can safely assume that the President would at minimum have authority to discharge a commissioner for good cause—if for no other.").

Third, Plaintiffs emphasize the qualifications provision for Board Members, including the partisan balance of the Board. Pls.' Opp'n at 25; *see also* 42 U.S.C. § 2000ee(h)(2). Citing no evidence, Plaintiffs assert that "a President who fires members of the opposing political party" likely "will *not* appoint new members from that party." Pls.' Opp'n at 25 (emphasis in original). But this again does not suggest that Board Members may not be removed from office. Indeed, the President is not required to appoint Board Members at all. President Obama, for example, declined to nominate any Members for the first two years of his term. *See* PCLOB, *Board Members*, https://www.pclob.gov/Board/Index (last accessed Apr. 23, 2025) (noting that the Board had no members after January 2008 until August 2012). The Board has even lacked a quorum for more than a third of the time it has existed in its current form. *See id.* (identifying terms of all former Board Members). Whether the Board has five members, fewer, or none at all is a determination left to the political branches. And as for Plaintiffs' assertion that "[w]hen Congress revised the Board's organic statute in 2007, it followed the same tried-and-true structure recognized in *Seila Law*," Pls.' Opp'n at 26, they neglect the key distinction between this case and *Seila Law*—that there, Congress imposed textual removal protections. *See Seila L.*, 591 U.S. at 207 ("[T]he President may remove the Director from office only for 'inefficiency, neglect of duty, or malfeasance in office.'" (quoting 12 U.S.C. § 5491(c)(3))).

Fourth, Plaintiffs assert that the Board's purpose is to conduct "'[o]versight' of the executive branch on behalf of Congress." Pls.' Opp'n at 26 (citing 42 U.S.C. § 2000ee(d)(2)). As an initial matter, that is an alarming view of the Board's purpose. The Board's purpose is not to serve "on behalf of Congress"; such language is entirely absent from the "purpose" section in the Board's statute and for good reason. 42 U.S.C. § 2000ee(c). The Board is not an Article I agency serving on Congress's behest. It is an agency "within the executive branch." *Id.* § 2000ee(a). It serves the public while fulfilling its duties within the Executive Branch. *See id.* § 2000ee(f). It provides its reports to the President, *id.* § 2000ee(1)(B)(i), as well as, to the extent permitted, the public, *id.* § 2000ee(f)(1). Its oversight of the Executive Branch informs the President. *Id.* § 2000ee(d)(2), (e)(1)(B)(i)(II). Congress has separate legislative agencies to perform oversight on *its* behalf, such as the Government Accountability Office. *See* 31 U.S.C. § 702(a).

After chiding Defendants for not mentioning the word "oversight" more often in their brief, Plaintiffs urge that "[o]versight is a quintessential example of a statutory function that is 'operationally incompatible with at-will Presidential removal.'" Pls.' Opp'n at 27 (quoting *Severino*, 71 F.4th at 1047). Not so. Inspectors General, who likewise perform oversight functions within the Executive Branch, "may be removed from office by the President." 5 U.S.C. § 403(b)(1)(A). Congress's design as to those offices flatly precludes Plaintiffs' incompatibility argument.

Further, *Severino* does not discuss oversight responsibilities, and it certainly does not support the assertion that an agency that provides oversight is incompatible with at-will Presidential removal. Plaintiffs' fragment of a quotation from *Severino* discusses agencies that assert "quasi-judicial or quasi-legislative functions," not agencies that provide oversight. *Severino*, 71 F.4th at 1047. *Severino* confirms that "[p]roducing advice for the President and to

his delegees is a quintessential example of a 'purely executive' function," *id.* at 1048, and that is precisely what the Board does, 42 U.S.C. § 2000ee(d)(2), (e)(1)(B)(i)(II).

Here, the Board is situated "within the executive branch." 42 U.S.C. § 2000ee(a). It serves to advise personnel in and components of the Executive Branch and to coordinate functions within the Executive Branch. *See, e.g.*, *id.* § 2000ee(d)(1)(C) ("The Board shall . . . advise the President and the departments, agencies, and elements of the executive branch to ensure that privacy and civil liberties are appropriately considered in the development and implementation of such legislation, regulations, policies, and guidelines."); *id.* § 2000ee(e)(1)(B)(i)(II) ("The Board shall . . . periodically submit, not less than semiannually, reports . . . to the President[.]"); *id.* § 2000ee(d)(3)(C) ("The Board shall . . . when appropriate, coordinate the activities of such privacy officers and civil liberties officers on relevant interagency matters."). While the Board also provides reports to Congress, *see, e.g.*, *id.* § 2000ee(e)(1)(B)(i)(I), that does not make it "quasi-legislative" or nullify its status as an executive agency. *See Severino*, 71 F.4th at 1049. The Board is neither quasi-legislative nor quasi-judicial, and the Board's statute makes clear that the Board's advice function is directed to the Executive Branch. *See* 42 U.S.C. § 2000ee(d)(1). The Board "has no adjudicatory or legislative features that would clearly signal a need for some measure of independence from Presidential control." *Severino*, 71 F.4th at 1049. It regulates no parties and adjudicates no disputes.

The Supreme Court has already "[b]ack[ed] away from the reliance in *Humphrey's Executor* on the concepts of 'quasi-legislative' and 'quasi-judicial' power." *Seila L.*, 591 U.S. at 217 (citing *Morrison v. Olson*, 487 U.S. 654, 691 (1988)). At the very most, "*Humphrey's Executor* permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was

13

said not to exercise *any* executive power." *Id.* at 216 (emphasis added).  If Plaintiffs believe that the Board serves legislative functions because it "advis[es] on proposed legislation; review[s] the implementation of legislation as well as executive branch policies, practices, and activities; and report[s] to Congress on whether those activities comport with civil liberties," Pls.' Opp'n at 27, then nearly every Executive Branch agency—including the Department of Justice, for example— is "quasi-legislative" in nature.  And in any event, they must acknowledge that these same activities directed at the Executive Branch—such as "advis[ing] the President and the departments, agencies, and elements of the executive branch to ensure that privacy and civil liberties are appropriately considered in the development and implementation of such legislation, regulations, policies, and guidelines," 42 U.S.C. § 2000ee(d)(1)(C), and reporting to the President on whether those activities comport with civil liberties, *id.* § 2000ee(e)(1)(B)(i)(II), qualify as executive functions. The Board exercises substantial executive power for all the reasons set forth in Defendants' opening brief (at 26–27).

### E. The Canon of Constitutional Avoidance Suggests That the President May Remove Board Members for Cause or at Will.

Plaintiffs assert that the Court should rely on *Severino* to ignore the canon of constitutional avoidance entirely, but *Severino* does not undermine that canon's application here.  *See generally Severino*, 71 F.4th 1038.  Plaintiffs' selective quotation transforms a sentence that validates Defendants' position into a suggestion that the canon of constitutional avoidance plays no role when the statutory structure and function, but not the text, indicate Congress's intent.  *Compare* Pls.' Opp'n at 31, *with Severino*, 71 F.4th at 1044 ("Courts will not assume Congress legislated a potential separation of powers problem unless the *statutory text* makes Congress's intent to test constitutional lines apparent." (emphasis added)).

The Supreme Court has recognized "only two exceptions to the President's unrestricted removal power." *Seila L.*, 591 U.S. at 204. Plaintiffs do not invoke the "inferior officer" exception from *Morrison* and instead rely solely on the *Humphrey's Executor* exception. *See* Pls.' Opp'n at 30–34. But this case is not on all fours with *Humphrey's Executor* because—in addition to lacking any textual for-cause removal provisions—the Board is a freestanding agency "within the executive branch," 42 U.S.C. § 2000ee(a), and it performs executive functions, such as advising the President on national security matters, *id.* § 2000ee(d)(1)(C); *see also Humphrey's Ex'r*, 295 U.S. at 628 (describing FTC Commissioner as officer "who exercises no part of the executive power"); *Severino*, 71 F.4th at 1048 ("[T]he Constitution gives pride of place in Article II to the President's power to seek advice from principal officers."). As *Seila Law* made clear, the *Humphrey's Executor* exception applies only to a multimember body that "was said not to exercise *any* executive power." *Seila L.*, 591 U.S. at 216 (emphasis added). At minimum, the Board's statutory functions raise a serious constitutional question as to whether the Board would fall into the *Humphrey's Executor* exception.

Plaintiffs chastise Defendants for not arguing whether, if Congress would have imposed removal protections for Board Members, those protections would have been unconstitutional. Pls.' Opp'n at 30–31. But it is black-letter law that the Court should not opine on issues not before the Court and on hypothetical statutes that were not enacted. *See Pub. Serv. Elec. & Gas Co. v. FERC*, 783 F.3d 1270, 1274 (D.C. Cir. 2015) ("[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." (quoting *Flast v. Cohen*, 392 U.S. 83, 96 (1968))). As explained above, the statute Congress wrote did not confer removal protections on Plaintiffs. This case presents no occasion for the Court to decide whether such nonexistent restrictions would be constitutionally permissible.

## II.    EVEN IF CONGRESS DID RESTRICT REMOVAL OF BOARD MEMBERS, <u>PLAINTIFFS ARE NOT ENTITLED TO REINSTATEMENT.</u>

### A.    De Facto Reinstatement Is Not Available Here.

The "power of a court of equity to restrain by injunction the removal of a [public] officer has been denied in many well-considered cases." *In re Sawyer*, 124 U.S. 200, 212 (1888); *see, e.g.*, *Baker v. Carr*, 369 U.S. 186, 231 (1962) (decisions that "held that federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" or that "withheld federal equity from staying removal of a federal officer" reflect "a traditional limit upon equity jurisdiction"); *Walton v. House of Representatives*, 265 U.S. 487, 490 (1924) (similar); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898) (similar); *White v. Berry*, 171 U.S. 366, 377 (1898) (similar). Plaintiffs' only cited support contrary to this long line of cases concerns inferior officers or employees, and it is undisputed that Plaintiffs were principal officers. *See, e.g.*, *Webster v. Doe*, 486 U.S. 592, 594 (1988); *Sampson v. Murray*, 415 U.S. 61, 62–63 (1974); *Vitarelli v. Seaton*, 359 U.S. 535, 536 (1959). The Constitution treats inferior officers and employees differently from principal officers. *See Morrison*, 487 U.S. at 670; U.S. Const. art. ii, § 2, cl. 2.

To avoid the long line of cases demonstrating that principal officers cannot be reinstated, Plaintiffs urge that they should be "de facto" reinstated. Pls.' Opp'n at 35. The cases Plaintiffs cite in support, however, resolved only standing questions—they did not provide the plaintiffs in those cases with the remedy Plaintiffs seek here. *See, e.g.*, *Severino*, 71 F.4th at 1042–43; *Swan*, 100 F.3d at 980–81. For instance, in *Swan*, the D.C. Circuit held only that a former member of the National Credit Union Administration who had been removed by President Clinton had standing to challenge his removal because his injury could theoretically be partially redressed by the actions of subordinate officials. *Swan*, 100 F.3d at 978–81; *see also id*. at 980–81 ("[W]e hold that the partial relief Swan can obtain against subordinate executive officials is sufficient for redressability,

16

even recognizing that the President has the power, if he so chose, to undercut this relief."). Standing is not at issue in this case, and *Swan* expressly declined to decide whether courts have the authority to order reinstatement as a remedy, noting that it was not "determining whether we can order more complete relief." *Id.* at 981. Similarly, *Severino* emphasized that the case "arises at the motion to dismiss stage, in which Severino need only plausibly allege that relief could be afforded on his claim." *Severino*, 71 F.4th at 1043. The D.C. Circuit cautioned that "greater specificity as to the availability of relief might be required at later stages in the litigation." *Id.* Further, Plaintiffs' claim to "de facto" reinstatement would seek to circumvent constitutional restrictions through semantics. *See Omar v. McHugh*, 646 F.3d 13, 22 (D.C. Cir. 2011) ("The Constitution does not turn on such arcane and empty semantics."). Only the President may appoint Board Members—not Article III courts, and not, for instance, Defendants Williams or Fitzpatrick.[3] Plaintiffs are not entitled to the remedy of reinstatement, however framed semantically.

---

[3]    Plaintiffs incorrectly suggest that Defendants have not disputed Plaintiffs' unsubstantiated allegations in ¶¶ 19, 20, 23, and 24 of their statement of facts. *Compare* Pls.' Opp'n at 35 n.3, *with* Defs.' Resp. to Stmt. of Facts (ECF No. 12-2) ¶¶ 19, 20, 23, 24. Defendants have disputed the accuracy of Plaintiffs' allegations and continue to do so. Plaintiffs' allegations are contradictory. Plaintiffs claim, for example, that Defendant Williams "effectuated the terminations, including by ordering PCLOB staff to stay late on Thursday January 23, 2025," Pls.' Opp'n at 35 n.3, but concede that "Plaintiffs continued working on PCLOB matters through Monday, January 27." *See* Pls.' Stmt. of Facts (ECF No. 10-2) ¶ 22. Moreover, Plaintiffs themselves admit the President removed them from the Board. *See id.* ¶ 35 ("The President terminated all three Democratic members of the Board[.]").

    If Plaintiffs seek to rely on Federal Rule of Evidence 801(d)(2)(D) for an exception to the hearsay rule, they bear the burden of establishing the agency relationship. *See Klayman v. Jud. Watch, Inc.*, 6 F.4th 1301, 1315 (D.C. Cir. 2021) ("[W]hen proffered evidence is 'sheer hearsay, it counts for nothing on summary judgment.'" (quoting *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007))). Here, Plaintiffs have not identified which purported Board staff members transmitted the hearsay, nor have they established that the alleged statements concerned matters within their scope of employment. *See Williams v. Pharmacia, Inc.*, 137 F.3d 944, 951 (7th Cir. 1998) (statement inadmissible where it concerned matters outside of the declarants' scope of employment). Plaintiffs' extremely vague assertion—devoid, for instance, of the who, what, when, where, and how—fails to satisfy their burden. *See, e.g.*, *Wilson v. DNC Servs. Corp.*, 831 F. App'x 513, 516 (D.C. Cir. 2020) (rejecting use of hearsay evidence "from an unidentified speaker" on summary judgment because "[w]hile reviewing summary judgment we only consider evidence that a party could present in an admissible form"); *Coleman v. Burnett*, 477 F.2d 1187, 1206 (D.C. Cir. 1973) (rejecting evidence that "was not only hearsay but also hearsay without any apparent means of refutation whatever" because the purported speaker was "unidentified").

### B.    Plaintiffs Are Not Entitled to a Permanent Injunction.

Plaintiffs' arguments for injunctive relief largely turn on misconceptions regarding the powers the Board may exercise when operating without a quorum.  As Plaintiffs themselves have previously recognized, the Board is quite capable of fulfilling its mission when in a sub-quorum status.  *See* PCLOB, *Semi-Annual Report* at 3, June 2022, https://documents.pclob.gov/prod/Documents/SemiAnnual/53/PCLOB%20Semi-Annual%20Report%20June%202022%20-%20Completed%20508%20-%2008152022.pdf ("The Board performed its mission during the sub-quorum period while working to fill vacancies for key positions pivotal to the Board's success.").  Plaintiffs have no persuasive response to the fact that the Board has operated in a sub-quorum status for large portions of its history; indeed, the Board has lacked a quorum for more than 41% of the time the Board has been authorized in its current form (i.e., 2,596 of 6,293 days from January 30, 2008, to April 23, 2025).  *See* PCLOB, *Board Members*, https://www.pclob.gov/Board/Index (last accessed Apr. 23, 2025).

Prior to Plaintiffs' removal from the Board, the Board enacted a policy clearly setting forth its sub-quorum powers (Ex. 1, attached).  That policy explains that Board Members can continue to provide advice "to the President, Executive Branch, and Congress."  PCLOB Sub-Quorum Pol'y § 5(I)(A).  The Board can continue to hire staff.  *Id.* § 5(II)(A).  It can continue to "[i]nterview, take statements, receive briefing, and obtain public testimony for projects initiated before the loss of quorum," *id.* § 6(I)(B), which would include Section 702 and all the projects Plaintiffs were working on before their removal, *see, e.g.*, LeBlanc Decl. (ECF No. 10-3) ¶ 20; Felten Decl. (ECF No. 10-4) ¶ 19.  It can continue to "[i]ssue advice and oversight reports as a 'Staff Report'" for

any projects that were initiated before the loss of quorum.  PCLOB Sub-Quorum Pol'y § 6(I)(C).

Thus, the Board continues to have significant power without a quorum.[4]

Second, Plaintiffs now urge that they could not receive backpay, Pls.' Opp'n at 39, an unexplained reversal from their initial Complaint where they requested backpay, an adequate alternative remedy.  *See* Compl. (ECF No. 1) at 26.  Their argument seems to be that, because they were not working, the statute prohibits them from being retroactively compensated for an allegedly improper removal that prevented them from working.  *See* 42 U.S.C. § 2000ee(i)(1)(B).  But an award of backpay assumes that a terminated employee would have been working when the employee would normally have worked.  *See, e.g.*, *Deming Hosp. Corp. v. NLRB*, 665 F.3d 196, 199–200 (D.C. Cir. 2011).

Plaintiffs' assertion that Board Members' "modest compensation" is not the reason they serve, Pls.' Opp'n at 40, does not change the analysis.  The importance or prestige of the position to Plaintiffs' careers and their "sense of civic duty" does not render backpay an inadequate remedy in this employment dispute.  *See, e.g.*, *Wiener v. United States*, 357 U.S. 349, 350 (1958) (suit "for recovery of his salary"); *Humphrey's Ex'r*, 295 U.S. at 618 (suit "to recover a sum of money alleged to be due . . . for salary"); *Myers*, 272 U.S. at 106 (suit "for his salary from the date of his removal"); *Shurtleff v. United States*, 189 U.S. 311, 318 (1903) (suit "for salary"); *Parsons*,

---

[4]        Plaintiffs' assertion that "the Board must provide a report to Congress in advance of the 2026 statutory sunset of the Foreign Intelligence Surveillance Act's § 702 surveillance authority" is not supported by Plaintiffs' citation.  *See* Pls.' Opp'n at 41–42 (citing Reforming Intelligence and Securing America Act of 2024, Pub. L. No. 118-49, § 19, 138 Stat. 862, 891).  Nothing in the cited section, nor that statute more generally, refers to the Board or imposes any requirement on the Board.  *See also* 42 U.S.C. § 2000ee(e)(2) (imposing no requirement on when the Board submits specific reports in response to specific laws and merely requiring that the Board submit at least two reports per year).  Similarly, Plaintiffs' inclusion of a letter from one particular individual asking for the European Commission's assessment of whether the removal of Board Members has any impact on an issue of European law (ECF No. 15-2 at 7) does not in any way imply that the European Commission believes there to be any impact.  And even if the European Commission were to raise any questions, which it has not, courts must give due regard for the deference owed to the Executive Branch "in matters of foreign affairs."  *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005).

167 U.S. at 326 (suit "for salary and fees"). As further explained in Defendants' opening brief, Plaintiffs are not entitled to injunctive relief.

### C. Plaintiffs Are Not Entitled to Mandamus Relief.

Finally, Plaintiffs' additional request for mandamus is likewise inappropriate. First, Plaintiffs do not have an available legal remedy under the Administrative Procedure Act or a clear right to relief elsewhere because they challenge an action by the President. *See Dalton v. Specter*, 511 U.S. 462, 470 (1994) ("The actions of the President, in turn, are not reviewable under the APA because . . . the President is not an 'agency.'").[5]

Plaintiffs' mandamus argument relies extensively on *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803). Pls.' Opp'n at 48–49. But the Supreme Court has already rejected Plaintiffs' *Marbury* arguments when it comes to principal executive officers. *See Myers*, 272 U.S. at 143 ("The language of the court in *Marbury v. Madison*, already referred to, was pressed upon this court to show that Parsons was entitled, against the presidential action of removal, to continue in office. If it was authoritative, and stated the law as to an executive office, it ended the case; but this court did not recognize it as such, for the reason that the Chief Justice's language relied on was not germane to the point decided in *Marbury v. Madison*."). And in any event, *Marbury* did not concern the exercise of *appointment* power—the President's constitutional responsibility, and one that is decidedly not ministerial. It concerned the issuance of a commission *after* the appointment had been made. *Marbury*, 5 U.S. at 151. Plaintiffs have been removed from their office, and the only way to return them is to reappoint them to the Board. *See* 42 U.S.C. § 2000ee(h)(4)(C). Mandamus cannot accomplish that weighty task.

---

[5]    Defendants have not forfeited this argument, especially not when Plaintiffs' scant reference to this argument is buried in a sentence in the middle of a paragraph discussing other issues. *Compare* Defs.' Br. (ECF No. 12-1) at 38 ("Plaintiffs do not have a clear right to relief."), *with* Pls.' Br. (ECF No. 10-1) at 45.

At the end of the day, "[c]ourts will not assume Congress legislated a potential separation of powers problem unless the statutory text makes Congress's intent to test constitutional lines apparent." *Severino*, 71 F.4th at 1044. Congress did not do so here. 42 U.S.C. § 2000ee. Mandamus relief is not available.

## CONCLUSION

For the reasons discussed above and in Defendants' opening brief, the Court should grant Defendants' cross-motion for summary judgment, deny Plaintiffs' motion for summary judgment, and enter summary judgment in favor of Defendants.

Dated: April 23, 2025    Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

EMILY HALL
Counsel to the Assistant Attorney General
Civil Division
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Tel: (202) 307-6482
emily.hall@usdoj.gov

EDWARD R. MARTIN, JR., D.C. Bar #481866
United States Attorney

By:    /s/ *Douglas C. Dreier*
DOUGLAS C. DREIER, D.C. Bar #1020234
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2551

*Attorneys for the United States of America*