IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRAVIS LEBLANC, *et al.*,<br><br>                    Plaintiffs,<br><br>       v.<br><br>UNITED STATES PRIVACY AND CIVIL<br>LIBERTIES OVERSIGHT BOARD, *et al.*,<br><br>                    Defendants. | No. 25-cv-542-RBW |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
FOR STAY PENDING APPEAL**

A full week after the Court issued its decision on the merits in this case—and with plaintiffs Travis LeBlanc and Edward Felten back at work to provide the Board with a quorum—the government now seeks again to disrupt the status quo with a stay pending appeal. ECF 28. For all the reasons set forth in the Court's Memorandum Opinion (Mem. Op.) (ECF 24), the stay motion should be denied. The government has satisfied none of the requirements for the "extraordinary relief of a stay pending appeal," *CREW v. FEC*, 904 F.3d 1014, 1017 (D.C. Cir. 2018), the absence of any one of which would be fatal to the government's motion. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). And the Supreme Court's recent stay decision in *Trump v. Wilcox*, No. 24A966, 2025 WL 1464804 (U.S. May 22, 2025), only confirms that a stay is inappropriate and unwarranted.

*First*, the government is unlikely to succeed on the merits. As this Court correctly determined, numerous features of the Privacy and Civil Liberties Oversight Board's organic statute make unmistakably clear that Congress intended to protect Board members from presidential

removal at will. There are "significant indicia that the 'absolute freedom from Executive interference deemed so mission-critical in *Humphrey's Executor* and *Wiener*' is just as mission-critical for the PCLOB's operation." Mem. Op. 35 (internal citation and some quotation marks omitted) (quoting *Severino v. Biden*, 71 F.4th 1038, 1049 (D.C. Cir. 2023)). "To hold otherwise would be to bless the President's obvious attempt to exercise power beyond that granted to him by the Constitution and shield the Executive Branch's counterterrorism actions from independent oversight, public scrutiny, and bipartisan congressional insight regarding those actions." Mem. Op.70. The Board is "tasked with investigating and providing recommendations to Congress to ensure that new existing laws adequately protect privacy and civil liberties, and providing oversight of the government's implementation of those laws to ensure that the Executive Branch is acting in conformity with Congress's will." *Id.* And far from carrying out the President's policies, the Board serves—by statute—as part of the "checks and balances" on the Executive's vast counterterrorism powers. *Id.* at 4 (quoting Intelligence Reform and Terrorism Prevention Act of 2004 § 1061(a)(2), Pub L. No. 108-458, 118 Stat. 3638, 3684). "[T]he PCLOB's structure and function as a multimember, nonpartisan, expert oversight board is 'operationally incompatible with at-will Presidential removal,' and thus, it is obvious that Congress intended for the Board to perform its statutory duties without 'the Damocles sword of removal by the President' over members' heads." Mem. Op. 37 (cleaned up) (quoting *Severino*, 71 F.4th 1047 (first quotation)), and *Wiener v. United States*, 357 U.S. 349, 356 (1958) (second quotation)).

In contending otherwise, the government advances a position squarely foreclosed by binding circuit precedent and this Court's Memorandum Opinion: that only the magic words of an express removal provision suffice. Mot. 3; *see Severino*, 71 F.4th at 1044 ("Congress may clearly indicate its intent to restrict removals through the statutory structure and function of an office.").

2

In any event, the government is mistaken that this Court found no "textual basis for restricting the President's removal authority." Mot. 3. To the contrary, the Court correctly determined that the "statutory text as a whole" demonstrates that the statute forbids removal at will. Mem. Op. 24. While the Court concluded that Congress's deletion of the "serve at the pleasure of the President" language was not equivalent to the explicit insertion of a "specific" anti-removal provision, Mem. Op. 27-28, the Court confirmed that this textual change along with other textual features of the statute strongly supported Plaintiffs' reading of the "text as a whole." And among other provisions safeguarding the Board's independence, its organic statute requires members be "selected 'solely on the basis of' their expertise" and "without regard to political affiliation," *id.* at 32 (quoting 42 U.S.C. § 2000ee(h)(2); be drawn from different "political part[ies]," *id.* at 32-33 (quoting 42 U.S.C. § 2000ee(h)(2)); and serve staggered terms exceeding the length of a presidential administration, *id.* at 33 (citing 42 U.S.C. § 2000ee(h)(4)). And Congress's 2007 amendments statute assign the Board the principal role of "advising Congress in support of its legislative function in the counterterrorism context." *Id.* at 34. That practically *every* provision of the Board's organic statute speaks to the Board's independence does not mean that none of them does. The Supreme Court has never blessed a requirement that "Congress must incant magic words in order to speak clearly," *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013), in the removal context or any other.[1]

---

[1] Indeed, the Supreme Court has held that Congress need not use magic words even to overcome strong textual presumptions like the sovereign immunity canon. *See, e.g.*, *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024) (waiver of federal sovereign immunity); *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 388 (2023) (abrogation of state sovereign immunity); *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 323 n.12 (2020) (creation of private damages remedy); *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 436 (2011) (imposition of jurisdictional bar); *see also Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 n.5 (2023) (state statute governing consent to personal jurisdiction).

*Second*, the Supreme Court's decision in *Wilcox* confirms that Defendants will suffer no irreparable harm absent a stay. The Court explained that the "stay" granted there "reflects our judgment that the Government is likely to show that both the NLRB and MSPB exercise considerable executive power." *Trump v. Wilcox*, No. 24A966, 2025 WL 1464804, at *1 (U.S. May 22, 2025). But there is no serious argument that the PCLOB exercises *any* executive power, much less "considerable executive power," and so the Government has not made the sole showing of irreparable harm recognized in *Wilcox*. This Court has already determined that the PCLOB does not "exercise substantial executive power," Mem. Op. 44, and stated that it "doubt[ed]" that the PCLOB exercised "any executive power" at all, Mem. Op. 46. The PCLOB can neither enforce any laws, promulgate any regulations, nor require executive-branch officials to take any action. It is farcical to suggest that the President would be irreparably harmed by allowing the plaintiffs to be restored to their positions so that they can work on non-binding reports that impose consequences on no one.

Indeed, the government *did not even make* a constitutional argument in this case, further confirming that it cannot argue that the President would suffer irreparable harm as a consequence of a hypothetical invasion of his constitutional prerogatives. *See* Defendants' Reply in Further Support of Cross-Motion for Summary Judgment, ECF 18, at 15 (acknowledging intentional decision not to raise a freestanding constitutional argument). That the Court nonetheless voluntarily addressed constitutional issues as part of the *Severino* inquiry, *see* Mem. Op. 38 n.27, does not mean the government can assert irreparable harm on the basis of a constitutional argument it never even made.

The government's own arguments in *Wilcox* also foreclose its position here. In *Wilcox*, the government contended that the NLRB and MSPB "wield[ed] substantial executive power in

4

implementing and enforcing federal labor and civil-service laws."[2]  The government specifically distinguished between agencies that "make reports to Congress"—which the government said did not exercise executive power—and agencies like the NLRB and MSPB.  *Id.* at 15.  The government argued that the NLRB and MSPB exercised substantial executive power because, among other things, they executed federal statutes that regulated private parties, such as employers, unions, and individual federal employees; could issue subpoenas; had the ability to issue binding orders to private parties, including orders to pay money; and could seek "remedies against private parties on behalf of the United States in federal court."  *Id.* at 15-18

None of that is true here.  The government points to a provision stating that the PCLOB is "authorized" to "have access" to information from federal agencies. 42 U.S.C. § 2000ee(g)).  That does not confer executive power.  The Congressional Budget Office is likewise authorized—in language that is mandatory, unlike the PCLOB language—to access information from the executive branch.  2 U.S.C. § 601(d) (executive branch "shall furnish" such information to the CBO).  Congress itself is "authorized" by the Constitution to have access to information from federal agencies and often seeks it in aid of its legislative and oversight functions.  So having access to executive branch information is not an exercise of executive power.  The government also contends that the PCLOB exercises executive power because it may provide advice to the President alongside its principal duties of oversight and advising Congress.  Mot. 3.  But providing advice that the Executive is free to *ignore* is the very opposite of wielding executive power on the Executive's behalf.  And while *Severino* described a very different agency whose sole responsibility was internal executive branch advice as performing an "executive function,"

---

[2] Application to Stay the Judgments of the United States District Court for the District of Columbia at 3, No. 24A966, *Wilcox v. Trump* (U.S.), available at https://tinyurl.com/56js8mf8.

*Severino*, 71 F.4th at 1048, the Supreme Court has expressly held that an "executive *function*" is not the same as "executive *power* in the constitutional sense." *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 216 (2020) (internal quotation marks omitted).  In short, it is the defendants who are "disregard[ing] the strong pronouncements of the Supreme Court" in seeking a stay.  *Cf.* Mot. 4.

The government's decision to wait a full week to even seek a stay confirms that the government suffers no irreparable harm here.  That delay is in notable contrast to the government's alacrity in the NLRB and MSPB cases that were the subject of the Supreme Court's *Wilcox* decision.  In both cases, the government sought a stay on the same day as the district court's order or the very next day.  *See* ECF No. 42, *Harris v. Bessent*, No. 25-cv-412 (D.D.C.) (same day); ECF No. 39, *Wilcox v. Trump*, No. 25-cv-334 (D.D.C.) (next day); *see also* ECF No. 16, *Dellinger v. Bessent*, No. 25-cv-385 (D.D.C. (same day).

*Third*, as this Court has already found, the balance of equities and public interest decisively favor the plaintiffs' continued service on the Board without interruption.  *See* Mem. Op. 64-66.  "There is a substantial public interest in the effective oversight of the government's counterterrorism actions and authorities, which is furthered by independent, candid, and expert advice being provided to the President, as well as to Congress as it debates reauthorizing important—yet controversial—authorities that have significant potential impact on privacy and civil liberties."  *Id.* at 65.  And "the PCLOB's statutory obligations are significantly impeded by the loss of a quorum due to the plaintiffs' challenged removals," including with respect to the Board's time-sensitive work on its report in advance of the Section 702 reauthorization.  *Id.*

The government ignores the Court's findings on the balance of equities and public interest entirely, instead offering as its only response that the Supreme Court recently stayed reinstatement

of members of the NLRB and MSPB. *See* Mot. 4. But, again, the Supreme Court did so only after concluding that "the NLRB and MSPB exercise considerable executive power," *Wilcox*, 2025 WL 1464804, at *1. As this Court correctly determined, the PCLOB does not. Mem. Op. 44. And the fact that the government waited a full week to seek a stay, and that the plaintiffs have in the meantime resumed their work at the Board, counsels strongly against the government's belated attempt to again disrupt the status quo. *Wilcox*, 2025 WL 1464804, at *1 (courts should avoid "the disruptive effect of the repeated removal and reinstatement of officers during the pendency of [a] litigation").

* * *

Although the PCLOB exercises no executive power, its work is vitally important to Congress's legislative and oversight functions. Absent of any argument that its removal restrictions violate the constitutional separation of powers, the government cannot show it is likely to succeed on the merits or that the plaintiffs' continued service during the pendency of an appeal would cause the government any harm or disserve the public interest. The Court should deny the motion for a stay pending appeal so that the PCLOB may continue to carry out its statutory mandate with independence, as Congress has lawfully directed.

Dated: May 29, 2025

Respectfully submitted,

 /s/ Elisabeth S. Theodore
Elisabeth S. Theodore (D.C. Bar No. 1021029)
Daniel Yablon (D.C. Bar. No. 90022490)
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: (202) 942-5000
elisabeth.theodore@arnoldporter.com
daniel.yablon@arnoldporter.com

Caleb Thompson (D.C. Bar No. 90007438)
ARNOLD & PORTER
  KAYE SCHOLER LLP
250 West 55th St.
New York, NY 10019
Tel: (212) 836-8000
caleb.thompson@arnoldporter.com

*Counsel for Plaintiffs Travis LeBlanc and Edward Felten*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 29, 2025, the foregoing motion opposition was served via ECF to all counsel of record.

                                        /s/ Elisabeth S. Theodore

                                        Elisabeth S. Theodore
                                        ARNOLD & PORTER
                                            KAYE SCHOLER LLP
                                        601 Massachusetts Ave., NW
                                        Washington, DC 20001-3743
                                        Tel: (202) 942-5000